CARTER, Judge.
This is an appeal by Wardell Fields, a corrections security officer with the Department of Public Safety and Corrections, from a termination of his duties at the Louisiana State Penitentiary.
FACTS
Wardell Fields was employed as a guard at the Louisiana State Penitentiary with permanent status for a period of nine years and ten months. On September 20, 1983, he was on duty at Camp H, Unit 1, “D” Dormitory. His shift began at 4:45 a.m. and was to end at 4:45 p.m. However, on that particular day, Fields’s relief guard was approximately twenty to thirty minutes late. Concerned as to why he had not been relieved on time, Fields left his post in “D” Dormitory to use the telephone.
Although “D” Dormitory did not have a telephone, “C” Dormitory, which is con *176 nected by an unlocked door, had a telephone. When Fields left “D” Dormitory to go into “C” Dormitory, no Corrections employee remained in “D” Dormitory.
By letter dated December 5, 1983, Fields was informed of his removal from his position effective December 14, 1983. The letter stated that on September 20, 1983, at 4:50 p.m., Fields was assigned to duty at Camp H, Unit 1, “D” Dormitory. On that date, he was found in “C” Dormitory, although he had not been relieved from the “D” Dormitory duty post, which violated Department of Corrections Employee Rules and Procedures, and specifically Rule 14(b). Rule 14(b) addresses aggravated malfeasance and provides, in pertinent part, that “no employee ... may leave his assigned post without permission.” This infraction is classified as a Schedule III offense, which is punishable by termination.
Prior to September 20, 1983, Fields had been instructed never to leave the inmates unattended in the dormitory.[1]
On January 13, 1984, Fields filed a notice of appeal with the State Civil Service Commission. In his appeal, Fields contended that he was terminated on December 14, 1983, and denied the allegations of misconduct. Alternatively, Fields alleged that it was established procedure for the employees assigned to “D” Dormitory to use the telephone in “C” Dormitory. Furthermore, he alleged the conduct set forth in the letter did not warrant such a severe penalty as termination. Fields requested reinstatement with back pay and other emoluments of his position.
At the Commission hearing, the established procedure for a “D” Dormitory guard to use the “C” Dormitory telephone was described by witnesses in an effort to vindicate Fields’ actions. This procedure allowed a guard in “D” Dormitory to use the telephone in “C” Dormitory if he first traded dormitories with the “C” Dormitory guard. Each would then guard the other’s dormitory while the “D” Dormitory guard used the telephone. Officer Roger Rachal, testifying on behalf of Fields, confirmed that this was the correct procedure to be followed.
Two witnesses called by Fields testified that they had previously used the telephone in “C” Dormitory while stationed in “D” Dormitory without exchanging posts with the “C” Dormitory guard. However, neither of these witnesses testified that their supervisors were aware of or condoned this conduct.
Fields testified that his assigned telephone was located in “C” Dormitory, that he used the telephone at least twice a day without being relieved by an officer in “C” Dormitory and that Major Pittman, Captain Rodriguez, and Lieutenant Nichols had given him permission to use the telephone. However, none of these people were called to testify to these facts and their failure to so testify was not explained.
The Referee did not accept Fields’s testimony that he had received permission to leave his assigned duty area. The Referee concluded that Fields left his assigned post at “D” Dormitory to use the phone in “C” Dormitory, without permission, which violated Rule 14(b) of the Department of Corrections Employee Rules and Procedure. He further found that the Department carried its burden of proving the infraction described in the December 5, 1983, termination letter by a preponderance of evidence and that Fields’ conduct impaired the operation of the public service and justified termination.
Fields filed an application for review of the Referee’s decision on February 26, 1985, which was subsequently denied on May 16,1985. Fields now takes this appeal and assigns the following errors:[2]
1. The Civil Service Commission erred in not finding that it was established procedure for an officer working in Dor *177 mitory “D” to use the telephone in Dormitory “C” without being relieved;
2. The Civil Service Commission erred in giving weight to the hearing testimony of Roger Rachal (Fields’ witness);
3. The Civil Service Commission erred in invoking the presumption that the testimony of Major Pittman, Captain Rodriguez and Lieutenant Nichols would have been adverse to appellant; and,
4. The Civil Service Commission erred in finding that appellant’s use of the telephone in Dormitory “C” impaired the operation of the public service and warranted his termination.
DISCUSSION
The appropriate standard of appellate review of actions by the State Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. Newman v. Department of Fire, 425 So.2d 753 (La.1983); Merchant v. Department of Finance, 391 So.2d 587 (La.App. 4th Cir.1980). Cf. LSA-R.S. 49:964(G)(5). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public servant. It must be shown by a preponderance of the evidence that the conduct did in fact impair the efficient and orderly operation of the public service. LSA-Const. art. X, § 8; Newman v. Department of Fire, supra; Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962).
Disciplinary action against a civil service employee must be based on legal cause. This has been defined by the Louisiana Supreme Court as conduct which impairs the efficiency of the public service, and which bears a real and substantial relation to efficiency and orderly operation of the public service in which the employee is engaged. Leggett v. Northwestern State College, supra; Ryder v. Department of Health and Human Resources, 400 So.2d 1123 (La.App. 1st Cir.1981).
Our review of the record shows that the basis for the disciplinary measure was not solely the fact Fields left the post he was assigned, but that he did so without permission. Fields was specifically charged with violating the following provision:
14. MALFEASANCE — AGGRAVATED (SCHEDULE III)
(b) No employee shall fail to report to his assigned duty post nor may he leave his assigned post without permission.
Although Fields argues that it was the standard procedure for the officer in “D” Dormitory to use the telephone in “C” Dormitory, the referee nevertheless did not accept Fields’ testimony that he had received “permission”' to leave his assigned duty area without first trading posts with a “C” Dormitory guard. The referee found that Fields violated Rule 14(b), and we cannot say that this finding is manifestly erroneous. When testimony is in conflict, reasonable evaluations of credibility and findings of fact found by the trier of fact should not be disturbed on appeal. Dundy v. Louisiana State University in Baton Rouge, 394 So.2d 650 (La.App. 1st Cir.1980).
Obviously, dismissal from permanent employment is the most extreme form of disciplinary action that can be taken against a classified state employee. Even a single particularly aggravated incident can be found to constitute legal cause for dismissal. Ryder v. Department of Health and Human Resources, supra. Fields’ dereliction upon the leaving of his post had broader implications than the mere absence. By leaving the inmates unattended, Fields endangered the safety of the public and/or the inmates themselves.
It was established by a preponderance of the evidence that Fields’ leaving his assigned post at “D” Dormitory substantially impaired the efficient and orderly operation of the prison, and the Commission was not arbitrary or capricious in so finding.
*178 After a thorough review and evaluation of the record, we find that termination, while harsh in this instance, was justified under the circumstances.
For the above reasons, the decision of the Commission is affirmed at Fields’ costs.
AFFIRMED.

. At the outset of the hearing, the parties stipulated that Fields received the Department of Corrections 1983 Employee Rules and Procedures Handbook prior to September 20, 1983.

. Although we do not address each of Fields’ assignments of error individually, the opinion adequately disposes of all issues raised.