671 So.2d 360 (1995)
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF STATE POLICE
v.
Michael J. MENSMAN.
No. 94 CA 1073.
Court of Appeal of Louisiana, First Circuit.
June 30, 1995.
Writ Granted November 17, 1995.
*361 Foye L. Lowe, Jr., Baton Rouge, for plaintiff-appellant Dept. of Public Safety and Corrections, Office of State Police.
Floyd J. Falcon, Jr., Avant & Falcon, Baton Rouge, for defendant-appellee Michael J. Mensman.
Before GONZALES and PARRO, JJ., and REDMANN,[1] J. Pro Tem.
PARRO, Judge.
This is an appeal by the Department of Public Safety and Corrections, Office of State Police ("State Police") from a decision of the State Police Commission ("Commission") reversing the State Police's termination of Trooper Michael J. Mensman ("Mensman"), and ordering that Mensman be reinstated, subject to certain conditions, to his former position. We affirm.

FACTS AND PROCEDURAL HISTORY
Mensman had been employed by the State Police for twenty years and was serving with permanent status when he was terminated effective May 14, 1993. In the termination letter mailed on May 12, 1993, Mensman was advised that his neglect of important basic duties, and his false pretense of doing his duties, were the cause for his dismissal. A litany of infractions was attached to this letter.
As a result of his dismissal, Mensman applied on June 7, 1993, for retirement benefits to which he was entitled by virtue of his time in service. Mensman then appealed his termination to the Commission on June 10, 1993, essentially complaining that there was insufficient cause to warrant the disciplinary action imposed by the State Police, and alluding to being under significant personal and work-related stress at the time of the alleged infractions. Mensman sought relief in the form of reinstatement to his former position with back pay and emoluments, expungement of references to the termination from his records, and attorney's fees. Alternatively, he asked for a reduction in the disciplinary action. In October of 1993, Mensman amended his appeal petition to assert that he was suffering from major depression at the time the State Police insisted he was neglecting his duties. The State Police responded to the appeal contending that it was rendered moot when Mensman applied for, and was *362 granted, retirement status, and further, that Mensman's assertions of a mental condition were immaterial in that it did not excuse his inability to meet performance criteria.
After a hearing on Mensman's appeal, the Commission issued its decision in which it determined that the appeal was not moot. With respect to the termination, the Commission concluded that, although there was cause for disciplinary action, termination was too severe a penalty. The Commission then granted the appeal, reversed the termination, and ordered Mensman reinstated to his former position as of May 14, 1993, subject to certain conditions. From this decision, the State Police appealed.

STATE POLICE COMMISSION
The State Police Commission was established by a constitutional amendment which became effective on January 1, 1991. La. Const. art. X, § 43. The Commission is vested with broad and general rulemaking power for the administration and regulation of the classified state police service, and generally to accomplish the objectives and purposes of the merit system of state police service. La. Const. art. X, § 48(A)(1). The Commission has the exclusive power and authority to hear and decide all removal and disciplinary cases. La. Const. art. X, § 50. A decision of the Commission shall be subject to review on any question of law or fact upon appeal to the appropriate court of appeal. Id.
Although there are no reported cases interpreting or applying the constitutional provisions affecting the Commission, the Commission's constitutional grant of authority to hear and decide appeals of disciplinary action imposed by the appointing authority parallels comparable constitutional provisions involving the State and City Civil Service Commissions, which have been the subject of considerable jurisprudence.[2] Therefore, we will apply this body of jurisprudential rules by analogy when analyzing the issues presented in this case.

ISSUES
One issue presented by the State Police is whether the Commission erred in concluding that Mensman's appeal was not rendered moot when he acquired retirement status. Another broader issue relates to the extent of the Commission's authority to hear and decide removal and disciplinary cases involving the classified state police service.

MOOTNESS
The threshold issue for this court to decide is whether Mensman's appeal to the Commission was moot. Mensman was terminated from his employment with the State Police. He successfully applied for retirement benefits, and at the same time appealed his termination. The State Police contend that Mensman's retirement status now moots his appeal. As support for this contention, the State Police cite the case of Major v. Louisiana Department of Highways, 327 So.2d 515 (La.App. 1st Cir.1976).[3] Their reliance on Major is misplaced, as that case is distinguishable on its facts from the present situation. In Major, two state civil service employees appealed their dismissals. The State Civil Service Commission ordered the reinstatement of both employees. Accordingly, the Department of Highways reinstated the two men and then took an appeal of the Civil Service Commission's decision. While the appeal was pending, one of the men voluntarily retired with the approval of the Department of Highways. The appellate court raised the issue of mootness on its own, and dismissed the case as to the retired employee since any ruling made by them would serve no useful purpose nor effect any practical relief. The sequence of events in Mensman's case is quite different. Mensman appealed his dismissal, seeking reinstatement, as did the two civil service employees in Major. However, Mensman did not voluntarily retire after a reinstatement as did the Major employee. Mensman involuntarily retired, due to a termination, at the same time he was appealing to the Commission for reinstatement.
*363 A moot case is one which seeks a judgment or decree which, when rendered, can give no practical relief. Robin v. Concerned Citizens for Better Education in St. Bernard, Inc., 384 So.2d 405, 406 (La.1980). The Commission found that practical relief for Mensman meant reinstatement to his former position with the State Police plus emoluments, and that retirement in no way achieved such relief. The Commission further found that retirement was merely an avenue of economic benefit available to Mensman because of his time in service, and he took advantage of it pending his appeal.
Moreover, it is clear from the record that Mensman never abandoned his intention to appeal his termination since he never acquiesced in the action taken by the State Police. For an acquiescence to take away the right of appeal, there must be an unconditional and voluntary acquiescence by the appellant, with an intent to acquiesce in the challenged action and to abandon the appeal; acquiescence is never presumed, but must be established by evidence which leaves no doubt regarding acquiescence. State, Through Department of Public Safety and Corrections v. Louisiana Riverboat Gaming Commission, 94-0702 and 94-0730 through 94-0735 (La.App. 1st Cir. 6/17/94), 640 So.2d 1368, 1372, rev'd in part and vacated in part on other grounds, 94-1872 and 94-1914 (La. 5/22/95), 655 So.2d 292; see LSA-C.C.P. art. 2085. Mensman filed his appeal immediately after applying for retirement benefits, which clearly indicated his intention to pursue his appeal rights rather than acquiesce in the termination. The Commission found that Mensman would not have taken his retirement if he had not first been terminated. The record reflects that this was actually stipulated to by counsel at the hearing. They stipulated that, if called to testify, Mensman "would say that he elected to receive his retirement only as a result of being terminated and he was eligible for retirement."
Therefore, we hold that the Commission did not err, as a matter of law, in concluding that Mensman's appeal of his termination was not moot.

LAW AND JURISPRUDENCE RELATING TO THE COMMISSION AND DISCIPLINARY ACTION
An employee who has gained permanent status in the classified state police service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const. art. X, § 46(A). Such an employee may appeal from any disciplinary action to the Commission, and the burden of proof on such an appeal, as to the facts, is on the appointing authority. Id.
The Commission's authority "to hear and decide" disciplinary cases (La. Const. art. X, § 50) includes a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction (cause). See Walters v. Department of Police of New Orleans, 454 So.2d 106, 113 (La.1984). In reviewing the Commission's finding of facts, a court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. See id. at 114. Moreover, in judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the reviewing court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion. See id.

DISCUSSION
"Cause" for the dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. Walters v. Department of Police of New Orleans, 454 So.2d at 113. Dismissal from permanent employment is obviously the most extreme form of disciplinary action that can be taken against a classified state employee; thus, cause that may justify some other lesser form of disciplinary action may not justify a dismissal. Appeal of Kennedy, 442 So.2d 566, 569 (La.App. 1st Cir.1983).
*364 In Mensman's case, the State Police terminated him for neglecting basic duties. Mensman does not dispute that he failed to advise troop headquarters when he left his unit (as he is required to do), and he falsely reported himself on duty while remaining in his residence for periods of time or stopping at a local restaurant. The State Police also documented instances when Mensman failed to report to work on time. On one occasion, it was observed that Mensman reported on the condition of the warning lights on the Berwick radio tower when he was not within visual distance to see them. Based on the record of the hearing on Mensman's appeal, the Commission determined that Mensman's specific acts of misconduct violated State Police rules and policies, were in dereliction of Mensman's duties, and impaired the public service. The Commission then concluded that cause did exist for disciplinary action against Mensman.
The finding of cause for disciplinary action is not disputed. The superintendent of the state police service is charged with the operation of his department and with the exercise of discretion in relation to disciplining his officers, and the Commission is not his supervisor. However, in reviewing the disciplinary action taken by the State Police through the superintendent, the Commission must consider whether the punishment was commensurate with the proven infractions under the circumstances.
At the hearing, Mensman testified in some detail about how he was suffering from personal and work-related stress at the time of these violations of State Police policies and rules. He described himself as disoriented and not really aware of what was going on around him. As early as 1989, his very severe personal problems caused him to seek advice from the troop commander and his supervising lieutenant, but nothing was done to assist him. Mensman testified he attempted to get counseling on his own, but his immediate supervisor refused his informal request to rearrange his schedule to accommodate his group therapy, so he eventually dropped out. It was not until he sought professional help from a social worker shortly before his actual termination that he was diagnosed as suffering from major depression, for which he was subsequently hospitalized. Testimony by deposition from Dr. Samir A. Salama, Mensman's treating psychiatrist, indicated that such a condition would absolutely interfere with Mensman's ability to perform his job duties as a state trooper since major depression is characterized, among other things, by low energy levels and loss of interest. Dr. Salama stated that Mensman was, at that time, suffering from poor attention and concentration, and feelings of helplessness and hopelessness, all of which affected his ability to carry out his employment duties, as well as his day-to-day activities.
After hearing Mensman's uncontroverted testimony describing his inability to function, both on the job and in his personal life, as well as Dr. Salama's assertion that Mensman's depressed state hampered his competency with respect to his duties, the Commission determined that Mensman's major depression did, in some way, affect his ability to perform at work. The Commission also noted that the State Police's failure to accommodate Mensman's schedule, so that he could attend group counseling at an earlier period, in some part caused Mensman to discontinue therapy. Further, the Commission found that Mensman had served with the State Police for twenty years without admissible evidence of prior discipline. Based on these mitigating circumstances, the Commission concluded that the penalty of termination was too severe and was not supported by the proven cause.
Following its determination that the disciplinary action was excessive, the Commission ordered Mensman reinstated to his former position as of May 14, 1993 (the effective date of his termination). Further, in accordance with Commission Rule 13.28(c),[4] the Commission imposed the following conditions upon Mensman's reinstatement:

*365 All leave lost by [Mensman] at the time of his termination is to be recredited to him, [he] is to be suspended for thirty (30) days beginning on May 15, 1993, and he is thereafter to be placed on leave of whatever nature is available until such is exhausted, after which, if necessary, [he] is to be placed on leave without pay through the date of his return to active duty. Upon certification by [his] treating therapist that he is psychologically fit to resume his duties, [he] shall be returned to active duty in his former position. [The State Police are] further hereby ordered to remove the May 12, 1993 termination letter, together with all references thereto, from [Mensman's] personnel file, and to replace it with a letter of suspension of the same date in accord with this decision.
Although this case presents a difficult issue for our review, we hold that the Commission's exercise of its authority was not arbitrary, capricious or characterized by abuse of discretion in reaching its conclusion that the punishment was not commensurate with the cause upon which the disciplinary action was based in light of the mitigating circumstances. Furthermore, even though no party contested the issue, we find that the conditions imposed on the reinstatement were reasonable and proper under the circumstances of this case.

DECREE
For the foregoing reasons, we affirm the decision of the Commission. Costs of this appeal are assessed to the State Police in the amount of $653.35.
AFFIRMED.
REDMANN, J. Pro Tem., dissents with opinion.
WILLIAM V. REDMANN, Judge Pro Tem., dissenting.
The superintendent of state police fired Master Trooper Michael J. Mensman by letter characterizing, as cause,
essentially ... an unprofessional and intolerable neglect by you of important basic duties, which you often pretended to be carrying out. Your false pretense of doing your duty, perhaps even more than your neglect of duty, negatively impacts your credibility, both personally and as a representative of the Service.
The letter gave specifics[1] and cited the admission by Mensman of over 50 incidents in the past year of leaving his patrol car without notifying his troop headquarters.
Mensman appealed his firing to the state police commission, alleging that he was being unfairly discriminated against, and that his mental illness was a mitigating circumstance requiring reduction in the penalty for the many violations he admitted but deemed insignificant because "believe me it is done every day by everybody."

Discrimination
Mensman's attitude, even at the commission hearing, is indicative of the superintendent's cause for concern:
I'd like to state, not as a defense, because it wouldn't lessen the degree of my guilt in this matter, but so the board could be aware of it, stops are made by all troopers on a regular basis that don't call in. This is a common, common, very common practice. Everybody does or has done that.

*366 And I'm not trying to, you know, use this as a defense. I did what they said I did. I'm guilty of it. But it's a common practice. Q. [by Referee Ershler] When you're talking about stops, you mean traffic stops or stops for cigarettes, too? A. No. I'm talking about going home, going watch a football game, like, is a common practice. Going home late at night, going to restaurants; it's commonly done where people go in and rely on the [portable, hand-held] radio and don't call in your stop. It's made to look like I'm the only trooper in the world that has done this, but believe me it is done every day by everybody.
The commission didn't believe him. It rejected Mensman's discrimination charge. We should, too.

Mental Illness as Mitigation
Perhaps the coyest aspect of Mensman's mental illness is that it did not prompt Mensman to see a psychotherapist until May 10, 17 days after the April 23 internal affairs investigation reports his admission of his many infractions.
Superintendent Fontenot's discharge letter noted Mensman's
request for leniency in consideration of personal problems and your long years of service. My primary concern, however, must be with the effect your actions and inactions have on the Service. Although the accumulation of a number of infractions by you is significant, I regard each occasion of deliberate misrepresentation, referred to hereinbelow, to be serious cause in and of itself.
In addition, one may note Lieutenant Hebert's testimony, on cross-examination:
Trooper Mensman has been working under my supervision for ... for sure two years straight. And Trooper Mensman has been a problem the entire time.... Q. Did he seem oblivious to you ... about the significance of maybe reporting timely or of being at a place other than where he was supposed to in his patrol car, being at The Forest Restaurant? A. No, sir. Every time Mike would get in trouble or suspended or written up, I'd call him in and counsel him. I knew Mike was having some serious personal problems. We had discussed it. And I informedas early as 1989, I informed Trooper Mensman at a meeting that if he had any more personal problems it was imperative that he bring it to his supervisor's attention so we could work with him on it. But every time he would be disciplined and counseled, he would come back with the same song and dance, "I see the light. I know what I did wrong. You're going to see a different Mike Mensman from now on." And for a couple of weeks, you did, and then the next thing you know, he got back in his old routine again.... Unless Mike was keeping something from me, Mike divulged everything that was in his personal life to me, and I counseled him as best I could. And Iin fact, it was either October or November of last year, I told Trooper Mensman that he best straighten up, that he start looking over his shoulders and do it right, because he was going to lose his job if he didn't straighten up. Q. His performance had deteriorated to that extent? A. Well, Trooper Mensman has always been deteriorated for a number of years.
As to his mental illness claim Mensman also faulted his supervisors.

Walters v. Department of Police of New Orleans, 454 So.2d 106 (La.1984), does instruct courts of appeal not to usurp the discretion of civil service commissions. It does not, however, instruct the state police commission to usurp the discretion of the superintendent, and, most emphatically, it does not instruct the commission to turn the superintendent's discretion over to any psychologist an employee can find who supports the employee's claim, for purposes of determining when a trooper may be returned to active, law-enforcing, gun-carrying duty.
The commission's order in effect appoints Mensman's psychologist Cindy Hayes superintendent of state police ad hoc, to decide when this trooper may be returned to active, law-enforcing, gun-carrying duty. That appointment is especially doubtful here because psychologist Hayes had already reported that Mensman was "a good candidate for *367 resumed duties at this time" as of September 27, 1993, five months before the commission appointed her. That appointment also ignores the deposition view of Mensman's psychiatrist, 12 days after the psychologist's report, that Mensman suffers from a "chronic depressive state" and "a personality disorder not otherwise specified."
Dr. Salama diagnosed "major depression, single episode, moderate," and attributed the severe episode, in part, to Mensman's getting fired (which of course did not precede itself). "He stated that he's been suffering from depression for a period of time and it has been getting worse since he was asked to resign.... Q. Did he relate to you any particular event or any particular thing that may have taken place that caused him to admit himself [to the hospital for psychiatric treatment] on the 16th of August. A. I think what we talked about, that his depression had stemmed from roots of having to grow up in a dysfunctional family. And what made it worsen was him going through that job loss as well as some marital problems." Dr. Salama's "major diagnosis" was "Number 1: Major depression, single episode, moderate. Number 2: Dysthymic disorder. Q. What is that? A. Dysthymic disorder is a chronic depressive state." "Dysthymic disorder is a chronic disorder that was going on for a period of years and it was topped off with a severe disorder of depression that we callthat's why we call it major depression." One's feeling blue about getting fired can hardly mitigate the pre-firing behavior that caused the firing.
I add that I disagree with the refusal to admit the evidence of prior discipline, if mitigation evidence regarding later discipline is admitted as it was here.
The commission's decision should be reversed.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] For example, compare the provisions of La. Const. art. X, §§ 46(A) and 50 with La. Const. art. X, §§ 8(A) and 12, respectively.
[3] The Major case actually involves two cases which were consolidated for appeal.
[4] Rule 13.28(c) provides, in pertinent part:

If the Commission after any hearing orders [a] dismissed or suspended employee reinstated, it may reinstate such employee under such conditions as it deems proper....
[1] Specifications included "repeatedly neglect[ing] your duty by being at your residence or the Forest Restaurant, instead of attending to your assigned area of patrol," while "not inform[ing] your troop headquarters of your location and that you were leaving your [patrol car] unit"; two specified instances of being late reporting for duty; one of "report[ing] that the warning lights of the Berwick radio tower were on, but in fact you did not check those lights that night, a very serious breach of duty relating to safety." "[A] full summary of these matters, showing and particularizing these and related behaviors, is attached to and made a part of this letter." Attached was a two and a half page official report dated April 23, 1993, noting eye-witness evidence of Mensman's violations during one week's monitoring, including an instance of being at his residence two hours 49 minutes while supposedly on duty. The report also states that "Trooper Mensman admitted to not advising Troop C, by radio, that he was out of his unit at the Forest Restaurant or his residence on numerous other occasions, more than fifty (50) in the last year." Mensman's counsel agreed at the commission hearing, "it says what it says, and we're not going to dispute.... I'm not going to dispute those things..."