671 So.2d 319 (1996)
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF STATE POLICE
v.
Michael J. MENSMAN.
No. 95-C-1950.
Supreme Court of Louisiana.
April 8, 1996.
*320 Foye Lavell Lowe, Jr., Baton Rouge, for Applicant.
Floyd J. Falcon, Jr., Daniel Laraway Avant, Baton Rouge, for Respondent.
PER CURIAM [*]:
The defendant, Michael Mensman, has been a Louisiana State Trooper for the past twenty years. He was terminated from his position with the State Police on May 14, 1993, for dereliction of duty, lying to his superiors, and making false reports. He appealed to the State Police Commission[1] contending that there was insufficient cause to support his termination, particularly since he was suffering from depression during the period he committed the charged infractions. The Commission agreed with him and reduced the termination to a suspension. The appeal by the Department of Public Safety and Corrections, Office of State Police ("State Police") was unsuccessful. The court of appeal affirmed the action of the Commission. The State Police sought writs with this Court.
We granted writs to determine whether the State Police Commission weighed too heavily the testimony of a testifying psychiatrist that Mensman's dereliction was caused by depression. Our review of the record now prompts us to conclude that the State Police Commission was not wrong in its assessment, most certainly not arbitrary, capricious, or abusive in the exercise its discretion. The evidence and testimony support the Commission's decision and the court of appeal's affirmance of that decision in this case. Accordingly, we affirm the ruling of the Commission that Mensman's dismissal was too severe a punishment given his lengthy period of service.
The facts of the case are as follow: after Mensman failed to report to a special detail unit, State Police Troop Commander Captain Mark Zeringue suspected Mensman of misconduct and ordered Trooper Lieutenant Claude Hebert, to monitor Mensman's activities.
On March 17 and 18, 1993, Mensman took several early morning breaks at the Forest Restaurant without reporting the breaks, as required, to Troop Headquarters. On March 22, 1993 Mensman reported for duty at 7:00 p.m. and after taking a break at the Forest Restaurant, returned to his house by 7:45 p.m., where he stayed for two and a half hours without reporting, as required, to Troop Headquarters that he was not available for duty.
On March 23, 1993, while in civilian clothes, Mensman radioed in to Troop Headquarters and falsely reported that he was on duty. He then returned to his house where he stayed until 7:51 p.m. At that time, he left in his patrol car and drove to the Forest Restaurant for a break. He then patrolled for thirty minutes and returned to his house at 8:27 p.m. where he stayed until 9:58 p.m. before he reported to Troop Headquarters that he was at home. An hour later, at 10:42 p.m. he exited his house and falsely reported that he was in service. He then returned to his home where he stayed until 11:16 p.m., when he returned to duty. Then, while not in a position to see, he reported that the lights of the State Police's radio tower system were functioning.
Lieutenant Hebert reported Mensman's activities to Captain Zeringue and disciplinary proceedings were initiated. As a result, Mensman was terminated effective May 14, 1993. Mensman then applied for retirement *321 benefits. However, he later decided not to accept retirement and appealed his termination to the State Police Commission.
In his appeal to the Commission, he argued that there was insufficient cause to support his termination. He stated that he was suffering from depression during the period he committed the violations. Mensman sought reinstatement, back pay, attorney's fees, and expungement of the termination from his record. The State Police responded by arguing that Mensman's appeal was moot given his retirement status and that his alleged mental impairment did not excuse his performance. The Commission determined that Mensman's appeal was not moot and found that there was sufficient cause for disciplinary action against him. However, the Commission felt that termination was too severe a punishment and ordered that Mensman be reinstated.
Upon appeal to the court of appeal, that court affirmed the Commission's determination that the punishment imposed on Mensman was not commensurate with the cause upon which it was based, ordered Mensman reinstated and that certain conditions, including suspension for a period of time be imposed.
After a thorough review of the record, we adopt the following recitation by the court of appeal of the law, the facts and its reasons for deciding to affirm the Commission:
"An employee who has gained permanent status in the classified state police service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const. art. X, § 46(A). Such an employee may appeal from any disciplinary action to the Commission, and the burden of proof on such an appeal, as to the facts, is on the appointing authority. Id.
"The Commission's authority "to hear and decide" disciplinary cases (La. Const. art. X, § 50) includes a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction (cause). See Walters v. Department of Police of New Orleans, 454 So.2d 106, 113 (La. 1984). In reviewing the Commission's finding of facts, a court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. See Id. at 114. Moreover, in judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the reviewing court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion. See Id.
"`Cause' for the dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. Walters v. Department of Police of New Orleans, 454 So.2d at 113. Dismissal from permanent employment is obviously the most extreme form of disciplinary action that can be taken against a classified state employee; thus, cause that may justify some other lesser form of disciplinary action may not justify a dismissal. Appeal of Kennedy, 442 So.2d 566, 569 (La.App. 1st Cir.1983).
"In Mensman's case, the State Police terminated him for neglecting basic duties. Mensman does not dispute that he failed to advise troop headquarters when he left his unit (as he is required to do), and he falsely reported himself on duty while remaining in his residence for periods of time or stopping at a local restaurant. The State Police also documented instances when Mensman failed to report to work on time. On one occasion, it was observed that Mensman reported on the condition of the warning lights on the Berwick radio tower when he was not within visual distance to see them. Based on the record of the hearing on Mensman's appeal, the Commission determined that Mensman's specific acts of misconduct violated State Police rules and policies, were in dereliction of Mensman's duties, and impaired the public service. The Commission then concluded that cause did exist for disciplinary action against Mensman.
*322 "The finding of cause for disciplinary action is not disputed. The superintendent of the state police is charged with the operation of his department and with the exercise of discretion in relation to disciplining his officers, and the Commission is not his supervisor. However, in reviewing the disciplinary action taken by the State Police through the superintendent, the Commission must consider whether the punishment was commensurate with the proven infractions under the circumstances.
"At the hearing, Mensman testified in some detail about how he was suffering from personal and work-related stress at the time of these violations of State Police policies and rules. He described himself as disoriented and not really aware of what was going on around him. As early as 1989, his very severe personal problems caused him to seek advice from the troop commander and his supervising lieutenant, but nothing was done to assist him. Mensman testified he attempted to get counseling on his won, but his immediate supervisor refused his informal request to rearrange his schedule to accommodate his group therapy, so he eventually dropped out. It was not until he sought professional help from a social worker shortly before his actual termination that he was diagnosed as suffering from major depression, for which he was subsequently hospitalized. Testimony by deposition from Dr. Sami A. Salama, Mensman's treating psychiatrist, indicated that such a condition would absolutely interfere with Mensman's ability to perform his job duties as a state trooper since major depression is characterized, among other things, by low energy levels and loss of interest. Dr. Salama stated that Mensman was, at that time, suffering from poor attention and concentration, and feelings of helplessness and hopelessness, all of which affected his ability to carry out his employment duties, as well as his day-to-day activities.
"After hearing Mensman's uncontroverted testimony describing his inability to function, both on the job and in his personal life, as well as Dr. Salama's assertion that Mensman's depressed state hampered his competency with respect to his duties, the Commission determined that Mensman's major depression did, in some way, affect his ability to perform at work. The Commission also noted that the State Police's failure to accommodate Mensman's schedule, so that he could attend group counseling at an earlier period, in some part caused Mensman to discontinue therapy. Further, the Commission found that Mensman had served with the State Police for twenty years without admissible evidence of prior discipline. Based on these mitigating circumstances, the Commission concluded that the penalty of termination was too severe and was not supported by the proven cause.
"Following its determination that the disciplinary action was excessive, the Commission ordered Mensman reinstated to his former position as of May 14, 1993 (the effective date of his termination). Further, in accordance with Commission Rule 13.28(c) [which allows the Commission to place conditions on an employee's reinstatement], the Commission imposed the following conditions upon Mensman's reinstatement:
All leave lost by [Mensman] at the time of his termination is to be recredited to him, [he] is to be suspended for thirty (30) days beginning on May 15, 1993, and he is thereafter to be placed on leave of whatever nature is available until such is exhausted, after which, if necessary, [he] is to be placed on leave without pay through the date of his return to active duty. Upon certification by [his] treating therapist that he is psychologically fit to resume his duties, [he] shall be returned to active duty in his former position. [The State Police are] further hereby ordered to remove the May 12, 1993 termination letter, together with all references thereto, from [Mensman's] personnel files, and to replace it with a letter of suspension of the same date in accord with this decision.
"Although this case presents a difficult issue for our review, we hold that the Commission's exercise of its authority was not arbitrary, capricious or characterized by abuse of discretion in reaching its conclusion that the punishment was not commensurate with the cause upon which the disciplinary action was based in light of the mitigating circumstances. Furthermore, even though *323 no party contested the issue, we find that the conditions imposed on the reinstatement were reasonable and proper under the circumstances of this case." Department of Public Safety and Corrections v. Mensman, 94-1073, p. 5-7 (La.App. 1st Cir. 6/30/95), 671 So.2d 360.

DECREE
The decision of the court of appeal is AFFIRMED.
WATSON, J., dissents and would uphold the termination.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part II, § 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] The State Police Commission was created by constitutional amendment and given the "exclusive power and authority to hear and decide all removal and disciplinary cases." La. Const. art. X, §§ 43 and 50. The State Police Commission's power to "hear and decide" cases is identical to that granted the State Civil Service Commission. Cf. La. Const. art. X, § 50 (1974) and La. Const. art. XIV, § 15(0)(1) (1921) and Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422 (1958).