PETTIGREW, J.
 

 |2In this case, plaintiff, Todd Huval (“Mr.Huval”), was terminated for cause from his employment with defendant, the Department of Public Safety and Corrections, Public Safety Services, Office of Louisiana State Police (“LSP”). Mr. Hu-val timely appealed his termination to the State Police Commission
 
 [1]
 
 (“the Commission”), which, after a public hearing, granted in part and denied in part Mr. Huval’s appeal. Specifically, the Commission reduced the disciplinary action taken by the LSP against Mr. Huval from termination to an eight-week suspension. The Commission further ordered that Mr. Huval be reimbursed for wages lost, together with interest, from the end of the eight-week suspension until paid, subject to an offset for earnings or unemployment benefits received by him until the date of the decision. Mr. Huval and his attorney were also awarded $1,500.00 in attorney fees. This appeal by the LSP followed. For the reasons set forth below, we reverse the Commission’s ruling and reinstate the disciplinary action taken by the LSP against Mr. Huval.
 

 FACTS AND PROCEDURAL HISTORY
 

 According to the record, Mr. Huval had been employed by the LSP for seven years and was serving with permanent status as a trooper when he was terminated on December 11, 2007. In a December 10, 2007 termination letter, Louisiana State Police Superintendent Colonel Stanley Griffin summarized the investigation leading to Mr. Huval’s termination as follows:
 

 Lt. Rhett Trahan of the Gaming Enforcement Section of the Louisiana State Police (LSP), in coordination with Sgt. Buzzy Trahan, Sgt. Coy Courville, and Trooper Hal Hutchinson, initiated an investigation into the possible unauthorized release of confidential information out of the LSP Gaming Enforcement Section. Any leak within the Section would compromise numerous investigations and time and Department resources could be wasted on those compromised investigations. Also, the identity and safety of persons conducting investigations could be coin-
 
 *525
 
 promised if information regarding undercover or tactical operations was provided to the wrong individuals.
 

 |sLt. Trahan and Trooper Hutchinson received information from a documented, reliable informant that investigators within the [LSP] were releasing confidential information to a third party, identified as Jason Abate. This information contains details of persons being investigated by the [LSP]. Jason Abate had told the informant that he had two contacts within the [LSP] who had previously worked in the Gaming Section but they had transferred to other sections. Jason Abate further indicated to the source that his contacts would contact someone else in the Gaming Section for information to determine if someone was under investigation for illegal gaming violations by the [LSP], Lt. Rhett Trahan was aware that [Mr. Huval] and Trooper Chad Boyer were previously with the Gaming Section and have since transferred to other sections in the LSP Bureau of Investigation. Lt. Trahan is also aware that [Mr. Huval] and Jason Abate are personal friends.
 

 As cause for termination, Colonel Griffin’s letter advised that Mr. Huval’s conduct was in violation of the following Louisiana State Police Policy and Procedure Rules: 01-02.02 Law Enforcement Code of Ethics; 01-02.48 Associations; 01-02.13 Unsatisfactory Performance; 01-02.22 Dissemination of Information; 01-02.05 Conduct Unbecoming an Officer; 01-02.07 Badge of Office; and 01-02.46 Reporting of Information. Colonel Griffin outlined the provisions violated by Mr. Huval, in pertinent part, as follows:
 

 01-02.02 LAW ENFORCEMENT CODE OF ETHICS
 

 As a Law Enforcement Officer, my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception; the weak against oppi'ession or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all men to liberty, equality and justice.... Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept secret unless revelation is necessary in the performance of my duty. I will never act officiously or permit personal feelings, prejudices, animosities, or friendship to influence my decisions ....
 

 01-02.48 ASSOCIATIONS, which states in pertinent part:
 

 • Commissioned officers shall avoid regular or continuous associations or dealings with persons whom they know, or should have known, are ... gamblers, suspected felons, persons under criminal investigation or indictment, or who have a reputation in the community for present involvement in felonies or criminal behavior.
 

 01-02.13 UNSATISFACTORY PERFORMANCE, which states in pertinent part:
 

 • A commissioned officer shall maintain a competency level sufficient to properly perform his duties and assume the responsibilities of his position. Officers shall perform their duties in such a manner as to maintain the highest standards of efficiency.
 

 |4* Unsatisfactory performance may be demonstrated by:
 

 A failure to conform to work standards established for the officer’s rank, grade or position.
 

 01-02.22 DISSEMINATION OF INFORMATION, which states in pertinent part:
 

 • A commissioned officer shall not disseminate, in any manner, any confidential information of the Louisiana
 
 *526
 
 State Police or its commissioned officers without proper authority.
 

 • For purposes of this order, confidential information shall be defined as information which:
 

 — A person could foresee the disclosure of information could endanger a commissioned officer or other person
 

 — May impede the just disposition of a case
 

 — May compromise or negate the judicial process
 

 — Violates any federal, state or local law or ordinance concerning the release of confidential information
 

 — Makes known the contents of an internal or criminal record or report to an unauthorized pei'son in violation of LRS 44:3, The Public Records Law
 

 • A commissioned officer may only divulge, make known, or exhibit the contents of an official file:
 

 — To a duly authorized police officer or agency official, provided by law and on approval of the appropriate Commander
 

 01-02.05 CONDUCT UNBECOMING AN OFFICER, which states in pertinent part:
 

 • A commissioned officer shall conduct himself at all times, both on and off-duty, in such a manner as to reflect most favorably on himself and the Department.
 

 • Unbecoming conduct is defined as conduct which:
 

 —Brings the Department or any of its subdivisions into disrepute
 

 —Reflects discredit upon the officer as a member of the Department
 

 —Impairs the operations or efficiency of the Department, the officer, or state service
 

 —Detrimentally affects the morale of the Department’s personnel
 

 —May reasonably be expected to destroy public respect for Slate Police Officers and/or confidence in the Office of State Police
 

 01-02.07 BADGE OF OFFICE, which states in pertinent part:
 

 • The term “badge of office” shall include the identification/commission card, badge, official position, title, uniform or any other tangible or intangible thing by which it can be construed that the concept “Louisiana State Police” is being interjected.
 

 15* A commissioned officer shall not use nor permit the use of his badge of office for personal or financial gain or for the benefit of any individual or group of individuals.
 

 01-02.46 REPORTING OF INFORMATION, which states in pertinent part:
 

 • A commissioned officer shall report to his superior officer all information that comes to his attention concerning organized crime, ... along with any other criminal activity or violation that an officer suspects.
 

 Mr. Huval timely appealed his termination to the Commission, arguing that the penalty of termination was not warranted, or alternatively, was excessive and should be reduced to a lesser form of discipline. Mr. Huval sought reinstatement, lost wages, and attorney fees. Following a public hearing of his appeal, which was consolidated with an appeal by Trooper
 
 *527
 
 Chad Boyer,
 
 [2]
 
 Docket No. 07-170-T (who was also terminated as a result of this investigation), the Commission concluded that although Mr. Huval had violated certain procedural orders, his actions did not constitute grounds for termination. On December 30, 2008, a decision was rendered, whereby Mr. Huval’s appeal was granted in part and denied in part. The Commission ordered that Mr. Huval be reinstated as a trooper and reduced his penalty from termination to an eight-week suspension, without pay or benefits. Mr. Huval was also awarded reimbursement for lost wages, together with interest, and attorney fees in the amount of $1,500.00.
 

 This appeal by the LSP followed. On appeal, the LSP assigns the following specifications of error for our review:
 

 1. The State Police Commission erred with its findings of both fact and law when they determined that Todd Hu-val’s actions only violated ... Louisiana State Police Policy and Procedural Manual No. 01-02.02
 
 Law Enforcement Code of Ethics
 
 and No. 01-02.22
 
 Dissemination of Information.
 

 2. The State Police Commission erred when it reduced Todd Huval’s disciplinary action from termination to an eight week suspension particularly after concluding as a matter of law that Huval “should be reassigned from the Bureau of Investigation and placed in a position that does not rely heavily on confidential or privileged information.”
 

 | f)3. The State Police Commission erred when they awarded Todd Huval and his attorney, attorney fees of $1,500.00 after determining that Todd Huval should have been suspended for eight weeks for violation of LSP Policy and Procedural Manual No. 01-02.02
 
 Law Enforcement Code of Ethics
 
 and LSP Policy and Procedural Manual No. 01-02.22
 
 Dissemination of Information.
 

 STANDARD OF REVIEW
 

 An employee who has gained permanent status in the classified state police service cannot be subjected to disciplinary action except for cause expressed in writing. La. Const, art. X, § 46(A). Such an employee may appeal to the Commission, where the burden of proof, as to the facts, is on the appointing authority.
 
 Id.
 
 The Commission shall have the exclusive power and authority to hear and decide all disciplinary cases. La. Const, art. X, § 50. The Commission’s authority “to hear and decide” disciplinary cases includes a duty to decide independently from the facts presented whether the appointing authority has good cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the cause.
 
 Department of Public Safety and Corrections, Office of State Police v. Mensman,
 
 95-1950, p. 4 (La.4/8/96), 671 So.2d 319, 321; Berry
 
 v. Department of Public Safety and Corrections,
 
 2001-2186, p. 7 (La.App. 1 Cir. 9/27/02), 835 So.2d 606, 611.
 

 The decision of the Commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the Commission is located. La. Const, art. X, § 50. In these instances, the appellate court is presented with a multifaceted review function.
 
 Bannister v. Department of Streets,
 
 95-404, p. 8 (La.1/16/96), 666 So.2d 641, 647. First, as in other civil matters, the Commission’s
 
 *528
 
 factual findings are entitled to deference and will not be disturbed unless clearly wrong or manifestly erroneous.
 
 Id.
 
 Second, in evaluating the Commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the reviewing court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by an abuse of discretion.
 
 Id.
 

 17“Cause” for dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation.
 
 Walters v. Department of Police of New Orleans,
 
 454 So.2d 106, 113 (La.1984). Dismissal from permanent employment is obviously the most extreme form of disciplinary action that can be taken against a classified state employee.
 
 Fields v. State, Dept. of Corrections,
 
 498 So.2d 174, 177 (La.App. 1 Cir.1986),
 
 writ denied,
 
 500 So.2d 426 (La.1987). Thus, “cause” that may justify some other lesser form of disciplinary action may not justify a dismissal.
 
 Appeal of Kennedy,
 
 442 So.2d 566, 569 (La.App. 1 Cir.1983). Repeated improper conduct after lesser disciplinary action has been taken, the totality of individual lesser offenses, or even a single particularly aggravated incident have all been found to constitute legal cause for dismissal.
 
 Ryder v. Department of Health and Human Resources,
 
 400 So.2d 1123, 1126 (La.App. 1 Cir.1981).
 

 DISCUSSION
 

 After hearing the testimony and considering the documentary evidence in the ree-ord, the Commission made the following undisputed
 
 [3]
 
 findings of fact:
 

 1. In September, 2007, confidential informants known as “Tony” and “Rose” told Trooper Hal Hutchinson that a person named Jason Abate, a known convicted felon, had stated to them that he had a contact within the Louisiana State Police who would obtain information about investigations for him.
 

 2. Jason Abate described his source of insider information as a State Trooper who once worked in gaming, had broken his neck and who could “whip any three men at one time.”
 

 3. From the description of the Trooper given in Finding of Fact 2, Lt. Rhett Trahan thought the “insider” trooper to be Trooper Todd Huval.
 

 4. On September 17, 2007 a meeting was held between Lt. Rhett Trahan, Sgt. Coy Courville, Sgt. Buzzy Trahan and M/T Hal Hutchinson at which time a plan was devised in which the confidential informants would be given a fictitious name to be given to Jason Abate with the request that Abate check with his informant at State Police to see if any investigation was being conducted as to that individual. The fictitious individual was |sgiven the name “Anthony DiMaggio” who was described as a bookie from Las Vegas who was setting up a bookmaking operation in Lafayette.
 

 5. The information about the fictitious “Anthony DiMaggio” was given to the confidential informants who, in turn, gave it to Jason Abate.
 

 6. Jason Abate called Trooper Todd Huval and asked if he knew anything about a bookie named Anthony DiMaggio.
 

 
 *529
 
 7. Trooper Huval told Abate that he did not know DiMaggio but agreed to call his Mend Trooper Chad Boyer; Hu-val called Trooper Boyer and told him to call Jason Abate about DiMaggio.
 

 8. Trooper Boyer told Trooper Huval that he did not know of DiMaggio but would find out if anybody knew about him.
 

 9. Trooper Boyer called Hal Hutchinson who said he would call and find out about DiMaggio; Hutchinson called back and told Boyer that “they had heard of’ DiMaggio and would be starting an investigation on him in a week or so.
 

 10. Boyer then called Jason Abate and gave him the information that “they” had heard of DiMaggio and would start an investigation on him in a week or so.
 

 11. Boyer also called Todd Huval and gave him the same information that he had given Jason Abate.
 

 12. Trooper Boyer admitted to investigators that what he had done, providing information about ongoing criminal investigations, although, in this case, fictitious, was wrong and possibly a crime.
 

 13. The person described by Jason Abate as his source of confidential information from State Police was Todd Hu-val.
 

 14. Trooper Huval knew Jason Abate was a convicted felon but Abate had been a good friend of his for a long time.
 

 15. When Trooper Huval relayed the information about DiMaggio to Jason Abate he warned Abate to not get involved with DiMaggio because he did not want Abate to go to jail.
 

 The present record, measured by the manifest error standard of review, discloses no error by the Commission in its factual findings. We have thoroughly reviewed the transcript of the appeal to the Commission as well as the documentary evidence introduced by the parties and find that the Commission’s factual findings are reasonable in light of the record reviewed in its entirety. However our inquiry does not end here.
 

 Next, we consider the Commission’s ruling that although Mr. Huval violated certain procedural orders of the LSP, his actions did not constitute grounds for ^termination. The Commission has a duty to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the cause.
 
 Mensman,
 
 95-1950 at 4, 671 So.2d at 321. In reviewing whether a penalty is commensurate with the offense proven, an appellate court must apply the “abuse of discretion” or “arbitrary or capricious” standard of review.
 
 Id.
 
 A conclusion of a public body is “capricious” when the conclusion has no substantial evidence to support it or the conclusion is contrary to the substantiated competent evidence. The word “arbitrary” implies a disregard of evidence or of the proper weight thereof.
 
 Bailey v. Department of Public Safety and Corrections,
 
 2005-2474, p. 15 (La.App. 1 Cir. 12/6/06), 951 So.2d 234, 243.
 

 In the instant case, the LSP imposed the sanction of termination based upon Mr. Huval’s actions in this case that centered around his personal relationship with a convicted felon with whom he shared confidential information on at least two occasions. Concerning whether the LSP had cause for taking disciplinary action in this case, the Commission failed to make an express finding of prejudice to the public service of the LSP or detriment to the efficient operation of the LSP. However, such a finding is clearly implied in the
 
 *530
 
 decision and abundantly reflected in the record.
 

 Although the Commission found insufficient evidence in the record to prove all of the charges leveled against Mr. Huval by the LSP, the Commission did not find Mr. Huval free from fault. The Commission found the evidence in the record supported the conclusion that Mr. Huval violated that portion
 
 of
 
 01-02.02 LAW ENFORCEMENT CODE OF ETHICS that states: “Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept secret unless revelation is necessary in the performance of my duty.” The Commission further concluded that the evidence supported a finding that Mr. Huval violated 01-02.22 DISSEMINATION OF INFORMATION, particularly the portion that states: “A commissioned officer shall
 
 not
 
 disseminate, in any manner, any confidential information of the Louisiana State Police or 110its commissioned officers without proper authority.” The Commission continued, making the following conclusions:
 

 As we noted in the consolidated case of Chad Boyer, while the factual circumstances of the case are somewhat convoluted, the premise surrounding it is relatively simple. That is, State Police had been told, by reliable sources, that information about ongoing criminal investigations was available to unauthorized persons from a source within State Police, In an attempt to determine the identity of the culpable individual within State Police a fictitious scenario was developed, the [“ ]DiMaggio” affair, and given to Jason Abate, a convicted felon and the person who had told informants that he could obtain such insider information. Mr. Abate was not aware that the scenario was fictitious.
 

 Shortly after the fictitious information was given to Mr. Abate, Trooper Boyer called Hal Hutchinson, one of the OSP investigation team, inquiring about the “DiMaggio” affair. Trooper Boyer had been asked by fellow Trooper Todd Hu-val to inquire about any information about the DiMaggio affair. Trooper Hutchinson gave more fictitious information to Trooper Boyer by telling him that State Police were aware of DiMaggio and would begin an investigation in a week or so. This additional fictitious information was passed on to Jason Abate and Trooper Huval. Although Trooper Huval admitted to investigators that “I know I was wrong,” that admission was given somewhat reluctantly.
 

 Trooper Huval reported this information to Lt. Rhett Trahan the evening of September 17, 2008. This action was substantiated through both Lt. Trahan’s testimony and Tpr. [Huval’s] cellular phone records.
 

 The relationship between a Trooper and a confidential informant, from the Trooper’s pei'spective, must be handled with strict conformity with the LSP Policy. There is clearly a rational basis for this rule. Investigations must not be compromised and the health and safety of law enforcement and others must not be placed in jeopardy.
 

 [[Image here]]
 

 While it is unacceptable to give any confidential information to a convicted criminal, the appointing authority did not provide significant evidence that there was a long standing association after Jason [Abate’s] conviction. The introduction of cellular phone records only hinted to conversations during two days of the incident (17th, 18th) and nothing prior. The testimony of Trooper [Huval] indicated that he would meet Jason Abate [at] pool competitions and that he borrowed money from him on one occasion during a time of financial
 
 *531
 
 distress. This incident occurred before Jason Abate was arrested on felony charges and the money was repaid before the time period here in question.
 

 [[Image here]]
 

 However, we believe the Appointing Authority failed to prove the remaining charges against Trooper Huval. We instruct the Appointing Authority to reissue the letter of discipline and in so doing to remove from it any reference to the remaining charges against Trooper Huval.
 

 |uAs recognized by this court in
 
 Berry,
 
 “since the public puts its trust in the police department as a guardian of its safety, it is essential the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust.”
 
 Berry,
 
 2001-2186 at 13, 835 So.2d at 615 (citing
 
 Newman v. Department of Fire,
 
 425 So.2d 753, 756 (La.1983)). “The [State Police] operates a quasi-military institution where strict discipline is imperative.”
 
 Id.
 
 (citing
 
 Stevens v. Department of Police,
 
 2000-1682, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627).
 

 Colonel Griffin testified at the hearing before the Commission concerning the impact Mr. Huval’s actions had on the reputation of the LSP:
 

 State Police is a very proud organization and the public demands a lot of State Police because it’s such a professional organization. And when one of our members acts contrary to the law and our policy, then we lose the confidence with the public, our positive image is somehow tarnished. But really what aggravated this situation is that you have a[n] officer that worked day-to-day with other officers. — -and police officers depend on each other. I mean, your ultimate goal when you leave your house in the morning is to get back there safely, and you depend on your fellow officers to have your back. And when you have an officer or officers violate that trust, that’s the ultimate insult and that breeches the violation of the oath that you took. And that’s what makes this case so egregious is that you had officers out there that was confirmed, sharing confidential information with outside sources for whatever reason, thereby jeopardizing an ongoing investigation and, most importantly, jeopardizing the safety of those officers that may have been investigating those activities.
 

 Mr. Huval’s actions in disclosing confidential information regarding a potential gaming investigation to Jason Abate, a convicted felon, had a real and substantial effect on the efficient operation of the LSP. Thus, we need not delve any further into the remaining allegations against Mr. Hu-val. Mr. Huval’s failure to comply with the LSP’s Policy and Procedure Manual Nos. 01-02.02 and 01-02.22 alone constitutes conduct prejudicial to the public service of the LSP.
 

 Having found sufficient legal cause to discipline Mr. Huval, we must now determine whether the discipline imposed was commensurate with the severity of the infractions. In other words, we must consider whether the Commission’s ruling to reduce Mr. Huval’s termination to an eight-week suspension was arbitrary, capricious, or characterized by an abuse of discretion.
 

 |12As previously noted, the Commission acknowledged the importance of the relationship between a Louisiana State Trooper and a confidential informant. While the Commission found that “[investigations must not be compromised and the health and safety of law enforcement and others must not be placed in jeopardy,” the Commission ultimately concluded that based on the circumstances of this case, “there was
 
 *532
 
 no real danger to anyone because the internal investigation regarding Anthony DiMaggio’ was fictitious in nature and designed to find a ‘leak’ in the section.” However, the Commission then recognized the potential danger posed to the LSP by Mr. Huval when they found as follows:
 

 Any time a law enforcement officer has an association with a known convicted felon there is a “hint of impropriety” even if all they do is talk and shoot pool. Trooper [Huval] should cease all contact with Jason Abate and any others that have the appearance of criminal activity. Trooper [Huval] should be reassigned from the Bureau of Investigation and placed in a position that does not rely heavily on confidential or privileged information. [Emphasis added.]
 

 The Commission continued, finding that Mr. Huval’s actions, while in violation of certain procedural orders, did not constitute grounds for termination. Thus, the Commission held:
 

 [W]e reduce the penalty from a termination to an eight week suspension, which is to be reflected in the reissued letter of discipline. As an additional consideration in our determination of the severity of the discipline, we note that Trooper Huval was
 
 the
 
 contact with Jason Abate. While the Appointing Authority failed to prove that Huval’s friendship with Jason Abate violated Section 01-02.48
 
 Associations,
 
 as it did not prove “regular or continuous associations or dealings” with a known felon, it is clear that Huval’s feelings of friendship with Abate was a factor that enabled Abate to use Huval as a source of information.
 

 For the above reasons, this appeal is granted in part and denied in part. Trooper Huval is to be reinstated as a Trooper effective December 11, 2007 and suspended without pay or benefits for eight weeks from December 11, 2007. He is to be reimbursed for wages lost, together with interest, from the end of the eight week suspension until paid, subject to an offset for earnings or unemployment benefits received by him until the date of this decision. [Emphasis added.]
 

 We are unable to reconcile the Commission’s findings in this regard. Mr. Huval argues on appeal that the Commission simply “recommended” that the LSP reassign him to a position that does not rely heavily on confidential or privileged information. He maintains this does not translate to an order that the LSP must transfer him to a | ^position that will ensure he will never have access to confidential information. We find no merit to this argument.
 

 As pointed out in brief by the LSP, the Commission’s determination that Mr. Hu-val be “placed in a position that does not rely heavily on confidential or privileged information” gives credence to the LSP’s decision that Mr. Huval’s actions were so egregious that termination was the only appropriate remedy available. We agree. If there is substantial evidence in the record to support a conclusion that based on his actions, Mr. Huval cannot be placed in a position of trust, then surely there is substantial evidence to support a conclusion that Mr. Huval’s termination was warranted and commensurate with his infractions. The Commission’s decision to the contrary, in this court’s opinion, is contrary to the substantiated competent evidence and implies a complete disregard of the evidence or of the proper weight thereof.
 
 See Bailey,
 
 2005-2474 at 15, 951 So.2d at 243.
 

 After careful review of the record as a whole, given the character, content, and proper weight of the evidence, we find that the Commission’s exercise of its authority in reducing Mr. Huval’s termination to an
 
 *533
 
 eight-week suspension was an arbitrary and capricious interference with the authority of the LSP to manage its department. The LSP had sufficient legal cause to take disciplinary action and carried its burden of proof. The punishment imposed by the LSP, i.e., termination, was commensurate with the infractions proven. Accordingly, we reverse the Commission’s ruling and reinstate the disciplinary action taken by the LSP.
 
 [4]
 

 CONCLUSION
 

 For the above and foregoing reasons, the decision of the State Police Commission is reversed and the disciplinary action taken by the LSP, termination effective December 11, 2007, is reinstated. All costs associated with this appeal are assessed against Mr. Huval.
 

 _LyDE CISION OF STATE POLICE COMMISSION REVERSED; TERMINATION EFFECTIVE DECEMBER 11, 2007, REINSTATED.
 

 [1]
 

 . The State Police Commission was created by constitutional amendment and given the "exclusive power and authority to hear and decide all removal and disciplinary cases.” La. Const, art. X, §§ 43 and 50. The State Police Commission’s power to "hear and decide” cases is identical to that granted the State Civil Service Commission.
 
 Department of Public Safety and Corrections, Office of State Police v. Mensman,
 
 95-1950, p. 1, n. 1 (La.4/8/96), 671 So.2d 319, 320, n. 1.
 

 [2]
 

 . Although these appeals were consolidated for hearing before the Commission, they were appealed separately to this court. The merits of Trooper Boyer's appeal, also before this court for consideration, are addressed in a separate opinion.
 
 See Boyer v. Department of Public Safety & Corrections, Office of Stale Police,
 
 2009-0700 (La.App. 1 Cir. 10/23/09), 24 So.3d 1033.
 

 [3]
 

 . In brief to this court, counsel for Mr. Huval acknowledges that the factual findings of the Commission are “fully supported’’ by the record.
 

 [4]
 

 . As we are reversing the Commission’s ruling, which necessarily includes a reversal of the award of $1,500.00 in attorney fees to Mr. Huval and his attorney, we need not address the LSP's third assignment of error.