712 So.2d 660 (1998)
Thomas A. LOTT
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF the LOUISIANA STATE POLICE.
No. 97 CA 1099.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
Rehearing Denied June 24, 1998.
*661 Floyd J. Falcon, Jr., Baton Rouge, for Plaintiff-Appellant.
Foye L. Lowe, Jr., Baton Rouge, for Defendant-Appellee Dept. of Public Safety and Corr.
Norman W. Ershler, Baton Rouge, for State Police Commission.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Thomas A Lott, a helicopter pilot for the Louisiana State Police, was fired in December 1995 for "dishonorable conduct unbecoming an officer" and "basic disloyalty to the State Police" after he allegedly wrote one anonymous letter and seven pseudonymous letters to the Federal Aviation Administration (FAA) and other public officials attacking his supervisor. The letters were sent from 1990 to 1995 and included allegations that his supervisor was not medically fit, had used a state police helicopter illegally to fly to an LSU football game, had made public statements critical of the head of the State Police, and was violating FAA maintenance regulations.
Lott appealed to the Louisiana State Police Commission (SPC), moved for summary disposition, and filed a motion in limine seeking to exclude the results of a polygraph test. In March 1996, a hearing was held on Lott's motions. The polygraph results were ruled admissible, and the summary disposition motion was referred to the merits. In July, August, September, October, and December, 1996, testimony was heard on Lott's appeal. In March 1997 the SPC rendered its decision upholding Lott's termination. Lott now appeals to this court.
Lott raises eleven assignments of error. We need address only the first three, which all involve contentions that Lott's right to due process of law was violated by the manner in which these hearings were held. Lott takes particular offense to the September hearing, which was conducted without a quorum.
The Louisiana Constitution establishes the SPC, a seven-member board,[1] to which classified state police officers have a right of appeal when subjected to disciplinary action.[2] Both our constitution[3] and the SPC rules[4] provide that four members constitute a quorum.
When Lott's March 1996 hearing was held, the seven board members were Helen O. Mendell, Lori Ann Landry, Gary M. Clark, Larry W. Jeane, Richard N. Kinsey, Genevieve L. May, and James R. Conway. Conway was absent from that hearing. The decision finding the polygraph results admissible and referring the motion for summary disposition to the merits was handed down in April 1996. By that time, Jeane had resigned. Only Mendell, Landry, Kinsey, and May participated in the decision.
By the July hearing, Jeane had been replaced by Theodore J. Newnam. Clark, Newnam, Johnson, May, and Mendell attended the first day of testimony on the merits; Kinsey and Landry were absent. In August, only Kinsey was absent, but in September, only three members appeared for the hearingClark, Newnam, and Kinsey. Over Lott's counsel's vehement objections and the misgivings of counsel for the Office of State Police (OSP)[5] that a quorum was lacking, the three members present heard the testimony *662 of five witnesses. All members were present for the October hearing, but Landry was absent in December. By the time the decision was rendered in March 1997, Kinsey was no longer on the commission. His replacement, Joe Cage, did not participate in the decision. Thus, of the six commission members who participated in the decision, only Clark and Newnam attended all the hearings. Mendell, Johnson, and May attended four, and Landry attended only two.
Lott characterizes the way in which these hearings were held over the course of a year, with the commission membership in flux, as "a gross denial of due process." He cites Johnson v. Louisiana State University,[6] for the proposition that Lott had the right to have his case heard "by a Commission composed of a constitutional quorum and decided by a majority of that quorum, while the members thereof are still in office."[7] In Johnson, a civil service case, all of the testimony was taken at one hearing, at which five of the seven commission members were present. The commission waited seven months to render a decision, during which time three of the commissioners were replaced. Although the former commission members signed the decision, only two of the commissioners who heard the testimony and participated in the decision were active members at the time it was rendered. The court held the former members had no authority to participate in the decision, and the two remaining members did not constitute a majority of the five member panel that heard the testimony. Thus, the court reversed the decision and remanded the case for further proceedings.
In this case, a quorum was present on four of the five days testimony was taken. Of the six members who participated in the decision, only two were present in September. Did Lott suffer prejudice amounting to a due-process violation because a majority of the six-member panel did not hear the testimony in September? We have carefully considered the testimony taken that day in pondering this question.
J. Wayne Soileau, who headed the internal-affairs investigation into this matter, testified no analysis was done into whether the letters were written using the same typewriter, whether the pseudonymous signatures were in Lott's handwriting, or whether the linguistics of the letters indicated they were written by the same person. He stated the State Police crime lab had checked the letters for fingerprints and had found many identifiable prints, but none of them belonged to Lott. Among the prints were those of Robert A. Craigo, who, according to Soileau, was hostile toward Lott.
Craigo, a pilot and Lott's co-worker, testified it was an understatement to say he has animosity toward Lott. He had access to the "inside information" that OSP used to tie the letters to Lott. He was promoted after Lott was terminated.
James A. Elenbaas, a state aircraft mechanic, testified pilots and mechanics for all agencies with aircraft have access to the maintenance logs referred to in one of the letters.
Colonel Kenneth Norris, Deputy Superintendent of the Louisiana State Police, testified Lott's fingerprints were not found on the letters. He confirmed the animosity between Lott and Craigo, stating Craigo wanted to "[p]ull Lott's head off." He stated Craigo had no role in the investigation into the letters.
Brun Marks, a friend of Lott's, testified she wrote one of the letters of her own volition, with information provided to her by Lott. After Lott told her he was very concerned about his supervisor's medical problems, she volunteered to write the letter.
Lott admitted to writing only one of the eight letters in question. An important part of his defense was that many other persons, including his enemy Craigo, had access to the "inside information" used to brand him as the letters' author. We conclude that the failure of a majority of the commission to hear this testimony and weigh its credibility substantially prejudiced defendant to the extent that his due process rights were violated.
*663 For the foregoing reasons, the judgment of the State Police Commission is reversed, and this case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] La. Const. Art. 10, § 43(A).
[2] La. Const. Art. 10, § 46(A).
[3] La. Const. Art. 10, § 43(A).
[4] State Police Commission Rule 2.6(a).
[5] Counsel for OSP stated, "[T]o me, it's fraught with too many problems to proceed without the quorum," but the referee ruled the hearing should continue.
[6] 418 So.2d 667 (La.App. 1st Cir.1982).
[7] Id. at 669.