J^SHORTESS, J.
Thomas A. Lott, a Louisiana State Police helicopter pilot, was fired in December 1995 for “dishonorable conduct unbecoming an officer” and “basic disloyalty to the State Police” after he allegedly wrote one anonymous letter and seven pseudonymous letters to the Federal Aviation Administration (FAA) and other public officials attacking his supervisor, Robert “Tim” Carbary. The letters, sent between 1990 and 1995, included allegations that Carbary was not medically fit, had illegally flown a- state police helicopter to an LSU football game, had publicly criticized the head of the state police, and had violated FAA maintenance regulations.
Lott appealed to the Louisiana State Police Commission, moved for summary disposition, and filed a motion in limine *744 seeking to exclude the results of a polygraph test. After a hearing, the Commission ruled in April 1996 the polygraph results were admissible and referred the summary disposition motion to the merits. In March 1997 the Commission denied Lott’s appeal, thus upholding his termination. Lott appealed, raising eleven assignments of error.
This court rendered a decision in May 1998 reversing the termination, finding Lott’s due process rights were violated because a majority of the Commission was not present for testimony crucial to Lott’s case,[1] and pretermitted examination of Lott’s other assignments of error. The Louisiana Supreme Court reversed, however, finding the presence of a quorum of the Commission was not required during an appeal; it remanded Lott’s case to this court for consideration of his remaining assignments of error.[2]
While the case was on appeal to the supreme court, Lott died. His widow, Betty Lott, was substituted as appellant.
CHARGES AGAINST LOTT
Mrs. Lott complains that the Office of State Police (OSP) failed to prove the charges against Lott. She contends the OSP proved only that he ignored the chain of command and that he was involved in writing two of the eight letters. This, she argues, was insufficient to show he “engaged in an underhanded campaign against [his] supervisor.” She further | ¡¡argües that “the decision to terminate was based primarily on the fact that Lott did not first complain to the chain of command,” which was “not the charge against Lott.”
The November 29, 1995, letter from a representative of the appointing authority to Lott advising him of OSP’s intention to terminate him is six pages long. Although the letter begins by stating the evidence shows he engaged in an underhanded campaign, the conclusion alleges Lott failed to follow the procedures, including using the chain of command, specified by OSP to raise genuine concerns regarding matters of safety and finance. It further states the matter “involves not only dishonorable conduct unbecoming an officer, but basic disloyalty to the State Police, as well as untrustworthiness.”
The broad charges against Lott of dishonorable conduct unbecoming an officer and basic disloyalty to OSP certainly encompass failure to use the chain of command. Furthermore, OSP could prove basic disloyalty and dishonorable conduct without showing Lott sent all eight letters.
Mrs. Lott’s remaining assignments of error are that 1) the Commission erred in admitting the results of the polygraph examination, 2) there was insufficient cause to sustain termination, 3) the Commission erred in concluding Lott wrote all eight of the letters in question, and 4) even if he authored the letters, the contents were protected as free speech on matters of public concern. The Commission found that, even ignoring the polygraph results and the six letters Lott denied involvement with, his participation in writing only the “Sammy Stone” and “Wade Robinson” letters was sufficient to support his termination. We shall address those letters first.
The Sammy Stone letter is addressed to the FAA in Baton Rouge. It states:
I feel it is my responsibility to write this letter and inform you of a few incidents which have occurred in the past months which ha[ve] greatly concerned me.
In February 1993 double heart bypass surgery was performed on Mr. Robert Carbary. I am under the impression that sometimes after this surgery Mr. Carbary’s FAA certification *745 was suspended due to medical reasons. On the following dates April 19, 1993; June 23, 1993; and June 24, 1993 Mr. Carbary was observed flying an aircraft, being a du[a]l-control helicopter, with a non-instructor.
Please investigate this matter as soon as possible for if this continues, I fear that the lives of innocent people could be [e]ndangered. Also observing these incidents were Mr. Jim Elenbaas and Mr. Tommy Lott from the State Police Hang[a]r in Baton Rouge, La.
No return address was provided on the letter or envelope. It was actually written by Brun Marks, a friend of Lott’s brother. Lott testified he expressed his concerns about Carbary to Marks, and she volunteered to write the letter. The name “Sammy Stone” was |4an alias she used when working undercover doing narcotics investigations. Lott stated he did not see a copy of the letter until two and a half months after it was written.
Some of the facts in the letter are accurate. Carbary did undergo heart surgery, and his FAA certification was suspended for six months for medical reasons. Car-bary flew the dual-control helicopter with Lott as the official command pilot, although Carbary operated the controls. Lott was not certified as an instructor.
Lott testified he flew with Carbary because Carbary ordered him to. He stated he was afraid that if Carbary fell forward onto the controls, Lott would not be able to gain control of the helicopter in time. However, he did not discuss his concerns with Carbary or anyone with the OSP. Carbary testified he ordered Lott to fly with him, and Lott did not object. Car-bary testified he had talked to someone with the FAA before piloting the helicopter and had been told he could fly without medical certification if the helicopter had dual controls.
The Wade Robinson letter was written to the FAA Aviation Medical Division in Fort Worth, Texas. The letter states:
I am writing to you regarding Robert R. Carbary who resides at 6956 Burtcliff Drive, Baton Rouge, La. In February, 1993, Mr. Carbary underwent a double bypass operation. I understand he will be applying for his 2nd class physical in August, 1993. I have known Mr. Car-bary for numerous years and since his surgery he has changed in my opinion both mentally and physically. Since the surgery his hands shake so bad that he has a hard time buttonfing] a shirt and he constantly forgets things such as dates and what he has just been talking about. I honestly think you should check more into his condition than just a routine flight physical.
Lott denied signing the name “Wade Robinson” to this letter. He testified he signed his own name, T.A. Lott, to the letter he mailed to the FAA. There are several copies of the letter in the record. One, obtained by OSP Internal Affairs from the FAA, has the signature blacked out. But the copy of the letter certified by the Acting Manager of the Aeromedical Certification Division of the federal Department of Transportation is signed ‘Wade Robinson.”
Lott testified he witnessed Carbary’s mental and physical problems complained of in the letter and wrote the letter because of his concern for the public. But when asked if the allegations in the letter were true, Carbary stated, “No, no. If that was the case, they wouldn’t have given me back my medical. No, that’s— that’s just a blatant lie.”
The Commission disbelieved Lott regarding Carbary’s medical condition and his contention that he signed his own name to the letter. The Commission concludes in its | ^written decision that Lott’s conduct in the Sammy Stone and Wade Robinson letters was “wrongful and unjustified” and that he showed “untruthfulness concerning the ‘Wade Robinson’ letter.”
Mrs. Lott contends that even if Lott wrote the Sammy Stone and Wade *746 Robinson letters, the letters expressed matters of public concern and were protected by the First Amendment. In Connick v. Myers.[3] the United States Supreme Court recognized that a state cannot condition public employment on a basis that infringes the employee’s constitutionally protected interest in freedom of expression. Whether speech is protected is a question of law,[4] but the appellate court must necessarily review the underlying facts to determine if that speech deserves constitutional protection.[5] Whether an employee’s speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, after reviewing the record as a whole.[6]
The first inquiry is whether the employee’s speech addresses a matter of public concern.[7] While the Sammy Stone and Wade Robinson letters facially address matters of public concern, an employee cannot cloak false or deceptive statements in the guise of public concern to gain protection from adverse consequences for those statements. The Commission examined Lott’s animus in writing the letters. Lott testified Carbary had blocked his promotion to deputy command pilot. According to Kenneth Norris, deputy superintendent of the state police, Lott came to him while Carbary was in the hospital recuperating from heart surgery. Lott indicated he was hoping to be promoted to Carbary’s position if Carbary did not “make it back ... to flight status” and asked Norris for his support. Norris questioned Lott’s motive in writing the letters, stating:
If you are concerned about the safety and the well-being of this Department or some section in this Department, then ... why don’t you come and tell us about it? You could jeopardize the safety of not only yourself flying the dad-gum thing, but from the Governor right on down to ... one of us regular guys.... Why send all of these anonymous letters about all of these problems? If you have these problems, then ... [y]ou should have come to us first and let us know. Then if you can show where we’re not taking action to handle it, then maybe that’s appropriate .... What was the motive for doing this? Was it really safety, was it really concern for the well-being of that Section? Then ... come to see me. He and I have known each other for years. He didn’t have any trouble coming to see me when he was looking for my support for the job.
| fiArticle 10, section 50 of the Louisiana Constitution gives the Commission the exclusive power and authority to hear and decide all removal and disciplinary cases involving employees who have gained permanent status in the classified state police service. The decision of the Commission is subject to review on any question of law or fact upon appeal to the court of appeal wherein the Commission is located. In Department of Public Safety and Corrections v. Mensman,[8] our supreme court instructed that in civil service disciplinary eases, an appellate court, in deciding whether to affirm the Commission’s factual findings, should apply the manifest-error rule prescribed generally for appellate review.
In its March 4, 1997, written decision, the Commission determined:
The termination action in this case ... clearly is not based on the mere fact of appellant’s expressions, but rather, is based on the falseness of the statements *747 and the inappropriate manner in which they were made. Thus, the Commission concludes that, while appellant has the right to freely express himself on matters of public concern, doing so in a false or deliberately misleading manner may subject him to being disciplined or terminated.
The Commission concludes that appellant wrote or caused to be written the July 17, 1993 letter signed “Sammy Stone”, and that this letter was actually written by Brun Marks. The Commission further concludes that the letter was deceptive and was intended to be so, and that appellant was- aware of this.
Considering all of the circumstances surrounding the undated letter sent to the FAA in Forth Worth, Texas, the Commission concludes that appellant personally wrote and sent this letter and that appellant did not sign his name, but signed the letter “Wade Robinson”. Thus, the Commission further concludes that appellant’s testimony before the Commission was not truthful in this regard.
The Commission was not legally wrong in concluding the statements were not entitled to the protection of the First Amendment.
Mrs. Lott argues that even if these letters were not protected speech under the First Amendment, the punishment — termination—did not fit the crime. In evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission’s decision unless it is arbitrary, capricious, or characterized by abuse of discretion.[9] “Arbitrary or capricious” means lacking a rational basis for the action taken.[10]
|7OSP regulations require an employee to promptly report to his superior officer any information that comes to his attention that tends to indicate any member or employee of OSP has violated any law, rule, regulation, or order. The regulations prohibit employees from publicly criticizing “the Department, its policies or other members or employees by ... writing or other expression where such expression ... exhibits a reckless disregard for the truth or tends to undermine the operation of the Office of State Police.” But those regulations also provide that nothing contained therein “shall prohibit a member from filing a complaint or criticism through proper channels.”
The Commission found Lott violated these regulations by criticizing Carbary to the FAA, pseudonymously and falsely. Such behavior tends to undermine the operation of the OSP. Norris testified that if Lott had written the two letters to the FAA using his own name and if Norris had believed Lott did so in good faith, he would have “stepped on [Lott’s] head a little bit and maybe give[n] him some time,” but he would not have terminated him. The Commission’s findings that Lott deviously wrote letters containing false information to the FAA in an attempt to oust his supervisor are reasonably supported by the record and are not manifestly erroneous. Given these facts, we cannot say the Commission was arbitrary or capricious in terminating Lott.
For the foregoing reasons, the judgment of the Commission is affirmed, at Mrs. Lott’s costs.[11]
AFFIRMED.

. Lott v. Department of Public Safety & Correcs., 97-1099 (La.App. 1st Cir.5/15/98), 712 So.2d 660.

. Lott v. Department of Public Safety & Correcs., 98-1920 (La.5/18/99), 734 So.2d 617.

. 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

. Id. at 148 n. 7, 103 S.Ct. 1684.

. Id. at 150 n. 10, 103 S.Ct. 1684.

. Id. at 147-148, 103 S.Ct. 1684.

. Id. at 150, 103 S.Ct. 1684.

. 95-1950, p. 4 (La.4/8/96), 671 So.2d 319, 321.

. Id.

. Shields v. City of Shreveport, 579 So.2d 961, 964 (La.1991), citing Bicknell v. United States, 422 F.2d 1055, 1057 (5th Cir. 1970).

. Because of our decision on these issues, we pretermit discussion of the remaining assignments of error.