835 So.2d 606 (2002)
Reuben O. BERRY, Jr.
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, et al.
No. 2001 CA 2186, 2001 CA 2187.
Court of Appeal of Louisiana, First Circuit.
September 27, 2002.
*607 Floyd J. Falcon, Jr., Baton Rouge, Counsel for Plaintiff/Appellant Reuben O. Berry, Jr.
Michele G. Nuschler, Stephen A. Quidd, Baton Rouge, Counsel for Defendant/Appellee Dept. of Public Safety & Corrections, Office of State Police.
Before: KUHN, DOWNING, and LANIER[1], JJ.
*608 LANIER, J.
In these consolidated cases, Reuben O. Berry, Jr. appeals a decision rendered by the State Police Commission (Commission) upholding his demotion by the Department of Public Safety and Corrections, Office of State Police (SP). Berry also appeals the Commission's decision finding it lacked jurisdiction to entertain his appeal of an annual performance rating.

FACTS AND PROCEDURAL HISTORY
Berry had been employed by the SP for approximately 21 years and was serving in permanent status as a Sergeant. In a letter dated August 14, 2000, issued by SP Superintendent, Col. Terry Landry, Berry was advised that he was demoted to the rank of Master Trooper effective September 3, 2000, for violating various SP Procedural Orders. Specifically, the demotion letter charged that on Sunday, December 12, 1999, Berry worked an off-duty traffic detail for Entergy with then Lt. Etland, the Executive Officer at Troop B. Etland required everyone working the detail to complete two copies of the off-duty detail slip (DPSSP 4107). One copy was given to Entergy as a receipt. The other copy was to be retained by the trooper until he received his check from Entergy. Once the trooper received his check, he was to turn in his detail slip along with a copy of the check to Etland who would forward the information to the SP payroll department. Etland discovered that Berry never turned in his detail slip or a copy of the check from Entergy. This caused Etland to check his records to see if Berry had submitted the appropriate paperwork for prior off-duty details he had worked. Etland discovered Berry had failed to submit paperwork for off-duty traffic details he worked in 1998 and 1999.
A subsequent Internal Affairs investigation revealed Berry had failed to submit the paperwork for the seventeen (17) off-duty traffic details he worked in 1999 and the thirteen (13) off-duty traffic details he worked in 1998. The demotion letter further alleged Berry acknowledged to the Internal Affairs investigators that he understood procedure required him to turn in this paperwork and admitted his failure to do so was a violation of SP policy and procedure. Specifically, the letter asserted that Berry's failure to turn in the required paperwork was a direct violation of SP Procedural Order 306, Section VI, Subsection F which provides:
VI. SPECIAL EVENTS/OFF-DUTY DETAILS

F. "Payments for officers are to be recorded on DPSSP 4107(Off-Duty Detail Receipt) and processed in the same manner as off-duty escort checks."
The procedure for reporting off-duty escort checks in Procedural Order 306 required officers to complete a DPSSP 4106 form to turn in along with a copy of the check the officer received at the earliest opportunity.
The demotion letter continued by stating Berry's failure to submit these detail slips resulted in monies not being included on W-2 forms for his off-duty detail work in 1998 and 1999. As a result, investigators sought to verify whether Berry had claimed the off-duty wages on his federal and state income taxes for the corresponding years. Although Berry had not yet filed his 1999 returns, it was discovered he had not claimed the additional wages on his 1998 tax returns. The letter informed Berry the omission of these wages on his 1998 federal tax return was a direct violation *609 of Title 26 U.S.C. § 6011, Subpart A. As such, it was also a direct violation of SP Procedural Order 201, Section I, Subsection B, Paragraph 1(a) that states, in pertinent part:
B. The Rules
1. Conformance to Laws

a. A commissioned officer shall conform to, and abide by, the laws of the United States, the State of Louisiana, all other states of the United States and subdivisions thereof.
The letter further charged that during the investigation it was discovered Berry was licensed to sell real estate and, in 1997, he earned $1,345 from his real estate work. However, Berry did not file an application for approval for his secondary employment; and, thus, was in direct violation of SP Procedural Order 202, Section IV, Subsection A, which provides:
IV. Regulations Governing Secondary Employment
A. No employee shall hold a secondary job or position without the express written approval of the Superintendent and in the manner prescribed herein.
The demotion letter noted that, as a supervisor, Sergeant Berry had been charged with ensuring his subordinates knew and followed the established policies and procedures. The letter concluded that, although he had been aware of the established procedures, Berry had intentionally and repeatedly failed to follow them; and, therefore, set a poor example for his subordinates and, thus, was not fit to serve as a supervisor.
On August 30, 2000, Berry filed an appeal of his demotion with the Commission in which he denied the allegations against him and challenged the severity of the discipline imposed. Berry averred there was no impairment to the efficiency of the public service and no cause to warrant discipline. He argued that Procedural Order 306, at the time of his demotion, was substantially different from Procedural Order 306 that was in effect during 1998 and 1999. He further averred he did not intend to violate the Internal Revenue Code and his failure to get approval for secondary employment was merely inadvertent.
Subsequently, on October 5, 2000, Berry was given his regular annual "Performance Planning and Review" rating for the period of November 5, 1999 to Sept. 3, 2000 (the last day in his position as sergeant.) Based largely on the same reasons given for his demotion, Berry was given a "poor" rating. Berry contested his rating and sought review. A re-rating was conducted on December 15, 2000, and Berry's rating was upgraded from "poor" to "needs improvement." Berry again sought review by the appointing authority who held the "needs improvement" rating was appropriate. On April 2, 2001, Berry filed an appeal of his "needs improvement" performance rating with the Commission that was subsequently consolidated with the appeal of his demotion.
In an Order to Show Cause dated April 16, 2001, the Commission questioned whether Berry's appeal of his performance rating was within its jurisdiction. Soon thereafter, the SP filed a motion for summary disposition alleging the Commission lacked jurisdiction over the rating appeal.
Prior to the hearing, the parties stipulated, in writing, to the following pertinent facts:
1. Berry worked seventeen (17) off-duty traffic details in 1999. Berry did not submit detail slips, DPSSP Form 4107, with copies of the checks he received as payment for these seventeen (17) details to the Department.

*610 2. Berry worked thirteen (13) off-duty traffic details in 1998. Berry did not submit detail slips, DPSSP Form 4107, with copies of the checks he received as payment for these thirteen (13) details to the Department.
3. The thirteen (13) off-duty traffic details in 1998 were not included in the income tax return filed by Berry with the Internal Revenue Service for the tax year 1998. They were included in the amended return.
4. Berry earned income as a real estate agent in 1997 totaling $1,345, but he did not submit an application for approval for secondary employment as a real estate agent until 2000.
A hearing was conducted before the Commission on May 17, 2001. The parties further stipulated Berry's 1998 federal income tax return was filed on April 15, 1999, and an amended return was filed in December, 2000. After hearing testimony and receiving evidence, the Commission took the matter under advisement.
In a decision rendered on June 19, 2001, the Commission found, as a fact, Berry knew other troopers turned in traffic detail forms; and, that as a Sergeant, Berry had received traffic detail forms from other troopers. Further, the Commission found that during an interview with Internal Affairs, Berry stated he understood the procedure required him to "make a copy of the check and escort, the traffic detail sheet that was completed at the time you did the traffic detail and send them both to the Troop." The Commission also acknowledged that Procedural Order 306 was amended on May 3, 2000, by adding the words "traffic details," as one of the examples of special events and off-duty details addressed in the order. The Commission noted, however, that prior to this revision, it had been the custom and practice for troopers to submit DPSSP 4107 forms for traffic details worked.
The Commission concluded SP regulations required Berry to turn in detail forms along with a copy of the check for the traffic details he worked in 1998 and 1999 and his failure to do so was a violation of the applicable Procedural Order. The Commission also found Berry intentionally failed to report off-duty detail wages on his 1998 income tax returns and he intentionally failed to seek approval for secondary employment despite his knowledge of its requirement. Noting that as a supervisor Berry was expected to set an example, the Commission found his conduct indicated he did not do so. Considering all of Berry's violations, the Commission concluded Berry should not serve in a supervisory position and upheld his demotion. The Commission also held that it did not have jurisdiction to hear Berry's appeal of his "needs improvement" rating, citing Louisiana Department of Agriculture and Forestry v. Sumrall, 98-1587 (La.3/2/99), 728 So.2d 1254. Accordingly, the Commission granted SP's motion for summary disposition and dismissed Berry's appeal of his service rating.
From the Commission's decisions, Berry appeals asserting ten assignments of error:
1. The State Police Commission erred in finding that appellant was guilty of a violation of any Procedural Rules or Orders;
2. The State Police Commission erred in failing to recognize that the Procedural Rule as it existed at the time of the alleged inappropriate action by the appellant did not apply to traffic details;
3. The State Police Commission erred in basing their decision on matters not charged in the letter of demotion;
4. The State Police Commission erred in failing to conclude the real estate *611 commission income was minor and only generated from family transactions;
5. The State Police Commission erred in failing to realize that permission for secondary employment of this type is routinely granted and no harm to the service occurred as a result of appellant's oversight in obtaining permission;
6. The State Police Commission erred in finding cause sufficient to warrant appellant's demotion;
7. The State Police Commission erred in that the Office of State Police failed to establish by competent evidence any harm to the service;
8. The State Police Commission erred in failing to reduce the penalty of demotion to a lesser discipline commensurate with the severity of the infraction;
9. The State Police Commission erred in failing to find that it had jurisdiction to hear Berry's appeal of his performance rating;
10. The State Police Commission erred in failing to award attorney fees.[2]

STANDARD OF REVIEW
An employee who has gained permanent status in the classified state police service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const. art. X, § 46(A). Such an employee may appeal from any disciplinary action to the Commission, and the burden of proof on such an appeal, as to the facts, is on the appointing authority. Id. The Commission shall have the exclusive power and authority to hear and decide all disciplinary cases. La. Const. art. X, § 50. The Commission's authority "to hear and decide" disciplinary cases includes a duty to decide independently from the facts presented whether the appointing authority has good cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the cause. Department of Public Safety and Corrections, Office of State Police v. Mensman, 95-1950, p. 4 (La.4/8/96), 671 So.2d 319, 321.
The decision of the Commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the Commission is located. La. Const. art. X, § 50. In these instances, the appellate court is presented with a multifaceted review function. Bannister v. Department of Streets, 95-404, p. 8 (La.1/16/96), 666 So.2d 641, 647. First, as in other civil matters, deference will be given to the factual conclusions of the Commission. Therefore, the Commission's findings of fact will not be reversed or modified unless manifestly erroneous (clearly wrong). Id. In the present case, many of the pertinent facts have been stipulated.
Second, in evaluating the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the reviewing court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion. Id.

VIOLATION OF PROCEDURAL ORDERS

(Assignments of Error Nos. 1-5)
On appeal, Berry asserts the Commission erred in finding he violated any Procedural *612 Orders. Because he was found to have violated three different Procedural Orders, we shall address each one separately.

A. Procedural Order 201 (Assignment of Error No. 1)
Procedural Order 201, Section I, Subsection B, Paragraph 1(a) required Berry to conform to, and abide by, the laws of the United States and the laws of Louisiana. The appointing authority charged and the Commission found as fact that Berry violated this Procedural Order by failing to report wages earned from his off-duty traffic details on his 1998 income tax return in violation of 26 U.S.C. § 6011, Subpart A.
The parties stipulated Berry did not report the income he earned from the thirteen details he conducted in 1998 on his 1998 income tax return. The parties further stipulated Berry filed his 1998 federal taxes on April 15, 1999, and he subsequently filed an amended return in December 2000 to correct the return. However, the amended return was completed only after the violation was discovered, the investigation was concluded, and Berry was demoted. There is no dispute Berry under-reported his income in 1998 and was in violation of federal law when he was cited for violating Procedural Order 201.
This factual finding of the Commission is not manifestly erroneous.

B. Procedural Order 202 (Assignments of Error Nos. 1, 4, and 5)
Procedural Order 202, Section IV, Subsection A required Berry to hold no secondary job or position without the express written approval of the Superintendent of State Police. The appointing authority charged and the Commission found as a fact that Berry violated this Procedural Order by failing to obtain approval to work as a licensed real estate agent.
The parties stipulated Berry had earned income as a real estate agent in 1997 totaling $1,345, but did not submit an application for approval of secondary employment as a real estate agent until 2000. The record indicates Berry filed the application in March 2000, approximately one month after the investigation began.
On appeal, Berry asserts permission for secondary employment of this type is routinely granted. He also asserts the amount of the secondary income was minor and was generated only by family transactions. Therefore, he argues, his oversight in obtaining permission was only "a technical violation."
First, we note that a violation is a violation, whether technical or otherwise. The circumstances surrounding the violation may have some determinative effect on the discipline meted out, but the fact a violation occurred is not in dispute. Second, Berry presented absolutely no evidence to support his contention that permission for "secondary employment of this type" is routinely given. Finally, we disagree with his contention that all of the secondary income was generated by family transactions. At the hearing, Berry testified to at least one outside transaction in 1997 for which he received a commission in the amount of $1,345. Berry admits he did not obtain approval for his secondary employment as a real estate agent in 1997 as required.
Therefore, the Commission's factual finding that Berry violated Procedural Order 202 is not manifestly erroneous.

C. Procedural Order 306 (Assignments of Error Nos. 1, 2, and 3)
Procedural Order 306, Section VI, Subsection F required Berry to record *613 payments made to him on DPSSP form 4107 (Off-Duty Detail Receipt), and to process them in the same manner as off-duty escort checks, i.e., turn in the DPSSP 4107 form along with a copy of the check at the earliest opportunity. The appointing authority charged and the Commission found as a fact that Berry violated this Procedural Order in failing to submit the required paperwork for the 13 traffic details he worked in 1998 and the 17 traffic details he worked in 1999.
Berry stipulated to the fact that he did not submit the detail forms for the off-duty traffic details he worked in 1998 and 1999. He argues that Procedural Order 306, as it existed in 1998 and 1999, the time of the alleged infractions, did not require the submission of paperwork for traffic details.
Procedural Order 306 was revised on March 31, 1997, August 16, 1999, and finally on May 3, 2000. Those portions of the 1997 and 1999 revisions pertinent here are substantively the same and are as follows:
A. Sponsors of special events (boat races, trail rides, fishing tournaments, fairs and festivals) often seek to employ additional police personnel for traffic control, security, or crowd control. Off-duty personnel may be employed to perform those functions for which State Police would not normally be required to provide off-duty officers.
* * * * *
E. Payments for officers are to be recorded on DPSSP 4107 (Off-Duty Detail Receipt) and processed in the same manner as off-duty escort checks.
Those same portions of Procedural Order 306 as amended in 2000 provide as follows:
A. Sponsors of special events/off-duty details (boat races, trail rides, fishing tournaments, fairs, festivals and traffic details, etc.) often seek to employ additional police personnel for traffic control, security, or crowd control. Off-duty personnel may be employed to perform those functions for which State Police would not normally be required to provide off-duty officers.
* * * * *
F. Payments for officers are to be recorded on DPSSP 4107 (Off-Duty Detail Receipt) and processed in the same manner as off-duty escort checks.
The letter of demotion specifically charged Berry violated Subsection F of Procedural Order 306 (formerly Subsection E in the 1997 and 1999 revisions.) Etland testified that payments for special events details as used in this subsection included off-duty traffic details. The evidence in the record reveals numerous DPSSP 4107 forms filled out by Berry for off-duty traffic details, which he concedes he did not process in the same manner as escorts as required by Subsection F (former Subsection E.)
However, Berry argues this subsection refers only to listed special events in Subsection A which did not include traffic details in the applicable 1997 and 1999 revisions. He further asserts the list contained in the parentheses was exclusive and the term "traffic control", as used in Subsection A, did not include traffic details. SP counters that the listing provided in the 1997 and 1999 revisions was illustrative and the term "traffic control", by definition, includes traffic details.
State Police rules have the effect of law. La. Const. art. X, § 48(A)(4). As such, they are subject to the statutory and jurisprudential rules for statutory construction and interpretation relative to legislation in general. See Sanders v. Department of Health & Hospitals, 388 So.2d 768, 770 (La.1980); Casse v. Department of Health and Hospitals, 597 So.2d 547, 550 (La.App. 1 Cir.1992). We find the following rules applicable to the case sub judice. *614 The interpretation of legislation is primarily the search for legislative intent. Burnette v. Stalder, 00-2167, p. 6 (La.6/29/01), 789 So.2d 573, 577. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent. La. C.C. art 9; La. R.S. 1:4. However, if a law is ambiguous or susceptible of more than one reasonable interpretation, statutory construction is necessary. Touchard v. Williams, 617 So.2d 885, 888 (La.1993). Accordingly, the starting point for the interpretation of any law is the language of the law itself. Id.
The words of a law must be given their generally prevailing meaning. La. C.C. art. 11. Louisiana Revised Statute 1:3 provides, in pertinent part: "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."
As ascertained from the record, a traffic "detail" is a job worked by an off-duty officer for a private business or entity that hires and pays the officer to handle a particular traffic situation. "Control" is defined by Black's Law Dictionary, 329, as the "[p]ower or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." Given the broad scope of the word "control" in its ordinary, usual meaning, the words "traffic control", as used in Subsection A, includes traffic details.
All of the versions of Procedural Order 306 clearly and unambiguously cover off-duty personnel conducting "traffic control" at special events. Accordingly, our statutory analysis ends here without resort to custom and usage. Berry acknowledges he did not report his income as required by Procedural Order 306 on thirty occasions over two years. The violation is established.
Ordinarily a change in wording of a statute, or in this case an order, is construed as a change in the law. See SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX, p. 17 (La.6/29/01), 808 So.2d 294, 305. See also The Sloop Active v. The United States, 11 U.S. (7 Cranch) 100, 102, 3 L.Ed. 282 (1812) where the Supreme Court concluded that an amendment to a law making a vessel liable to forfeiture was a "legislative confession that the law was not so before." In the instant case, the change did not alter or effect the operative language of the Procedural Order in force at the time of the charged violations. The addition of "off-duty details" and "traffic details, etc." within Section A of Procedural Order 306 did not alter an off-duty officer's duty to process his payments according to established procedure when the officer has been employed for traffic control, which Berry concedes occurred here. The 1997 and 1999 revisions of Procedural Order 306 still pertained to traffic details. The list in parentheses is merely illustrative. Accordingly, the subsequent 2000 revision which specifically added the words "traffic details" to the listing set out in Procedural Order 306, Subsection A, merely added another item to an illustrative list.
Berry was required to submit traffic details under all versions of Procedural Order 306. Berry stipulated he did not do so on 13 occasions in 1998 and 17 occasions in 1999. Berry violated Procedural Order 306. Accordingly, the Commission based its disciplinary decision on legal cause and it did not abuse its discretion by imposing a punishment on Berry.
*615 Finally, Berry argues the Commission erred in reaching its factual finding that under the 1997 and 1999 revisions, "it was the custom and practice for Troopers to submit DPSSP form 4107 for both escort and traffic details." He contends he was charged in the letter with violating the 2000 revision of Procedural Order 306 and, therefore, such a factual finding was beyond the scope of the charges set forth in the letter of demotion. This argument is without merit.
The Commission did not commit legal or manifest factual error in finding that Berry violated SP Procedural Orders 201, 202, and 306.
Accordingly, assignments of error 1, 2, 3, 4, and 5 are without merit.

COMMISSION'S EXERCISE OF DISCRETION

(Assignments of Error Nos. 6, 7, and 8)
On appeal, Berry asserts the SP failed to establish by competent evidence any harm to the service. Berry contends the Commission erred in finding cause sufficient to warrant his demotion and in failing to reduce the penalty of demotion to a lesser discipline commensurate with the severity of the infraction.
As previously stated, the Commission's exercise of its discretion in determining whether there is legal cause for imposing punishment and whether the punishment is commensurate with the infraction should not be modified by this court unless it is arbitrary, capricious or characterized by an abuse of discretion. Bannister, 95-0404 at p. 8, 666 So.2d at 417. "Cause" has been interpreted to include conduct prejudicial to the public service involved or detrimental to its efficient operation. Id. "Arbitrary or capricious" means the absence of a rational basis for the action taken. Id.
First, it must be determined whether cause for Berry's demotion existed. Berry alleges the SP did not bear its burden of proof in showing his infractions impaired the efficient operation of the SP. We disagree.
One of the primary missions of the SP is law enforcement. When an officer in that service violates the law, it casts doubt upon the credibility of the service to ably conduct one of its principal functions. Moreover, since the public puts its trust in the police department as a guardian of its safety, it is essential the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. See Newman v. Department of Fire, 425 So.2d 753, 756 (La.1983). The SP operates as a quasi-military institution where strict discipline is imperative. See Stevens v. Department of Police, XXXX-XXXX, p. 8 (La. App. 4 Cir. 5/9/01), 789 So.2d 622, 627. Berry's numerous violations of internal procedural orders, in addition to his violation of federal law, constitute conduct prejudicial to the public service of the SP.
In addition, Berry's continued violation of Procedural Order 306 resulted in a breach of an agreement that SP had with the Internal Revenue Service about the administrative handling of off-duty detail wages for tax purposes. Pursuant to a 1990 agreement, SP was required to give each officer an additional W-2 indicating his off-duty detail wages to ensure proper income reporting. SP relied on the officers' compliance with Procedural Order 306 in turning in copies of the detail slips and checks to determine the correct amount to be listed on the additional W-2 forms. Berry's failure to comply with Procedural Order 306 prevented SP from issuing him proper additional W-2 forms in 1998 and 1999 to comply with the agreement. *616 Consequently, Berry's actions had a real and substantial effect on the efficient operation of the SP.
The Commission's finding of cause is not arbitrary, capricious or an abuse of discretion.
Having found sufficient legal cause to discipline Berry, we must now determine whether the discipline imposed was commensurate with the severity of the infractions. During the investigation, Berry stated he knew SP procedure required him to turn in traffic detail forms. Therefore, he knowingly committed 13 infractions of this procedure in 1998 and 17 infractions in 1999. Berry also admits he under-reported his income in 1998; a violation of both federal law and the SP's agreement with the I.R.S. These violations cumulated with his failure to submit an application for secondary employment are repeated failures to adhere to SP's established standards of conduct.
As a supervisor, Berry had a duty to set an example for his subordinates, but more importantly, Berry was charged with ensuring his subordinates knew and followed SP policies and procedures. When he violated various procedural orders, the appointing authority and the Commission could reasonably conclude he could not be entrusted to ensure that those under his command understood and followed them.
Considering all of the violations, the Commission's affirmance of Berry's demotion from Sergeant to Master Trooper was not arbitrary, capricious or an abuse of discretion.
Assignments of error nos. 6, 7, and 8 are without merit.

COMMISSION'S JURISDICTION

(Assignment of Error No. 9)
Berry contends the Commission erred in determining it did not have jurisdiction to entertain the appeal of his "needs improvement" performance rating. Berry argues State Police Rule 13.10 specifically grants him the right to appeal an unsatisfactory service rating. SP argues that, notwithstanding any Commission rules, the Louisiana Constitution limits the Commission's jurisdiction to disciplinary and discrimination claims under art. X, § 46.
Citing the rationale and holdings of the Louisiana Supreme Court in Louisiana Department of Agriculture and Forestry v. Sumrall, 98-1587 (La.3/2/99), 728 So.2d 1254, the Commission held its jurisdiction was limited by La. Const. art. X, §§ 46 and 50. As the appeal of an unsatisfactory rating is not provided for in La. Const. art. X, §§ 46 and 50, the Commission concluded it lacked jurisdiction over such an appeal.
Berry counters that Sumrall is not on point. He further urges the Commission lacks the authority to determine the constitutionality of its own rules, which, in effect, it did in deciding it was without jurisdiction to hear the appeal of his "needs improvement" rating.
Although not precisely on point, we agree with the Commission that the rationale and holdings of Sumrall preclude a finding it had jurisdiction over Berry's appeal of his "needs improvement" rating. In Sumrall, the Louisiana Supreme Court addressed the extent of the State Civil Service Commission's powers, as limited by the Louisiana Constitution, specifically with regard to discrimination claims. The Supreme Court concluded that Article X of the Louisiana Constitution limits the State Civil Service Commission's power to hear the appeals of state civil service employees to two categories of claims: (1) discrimination claims provided for in § 8(B); and (2) removal or disciplinary claims provided for *617 in §§ 12(A) and 8(A). Sumrall, 98-1587 at p. 7, 728 So.2d at 1260. The Court noted the Commission's authority to enact rules, though broad and general, is nonetheless limited by the terms expressed in the constitution. Id., 98-1587 at p. 10, 728 So.2d at 1261. Therefore, the court found that any Commission rules expanding its power beyond constitutional limits were unconstitutional. Id., 98-1587 at p. 13, 728 So.2d at 1263. Specifically, the Court held unconstitutional particular civil service rules to the extent they purported to authorize appeals to the Commission on discrimination claims outside the scope of the Commission's limited jurisdiction as defined under Article X, §§ 8 and 12 of the Louisiana Constitution. Id., 98-1587 at p. 15, 728 So.2d at 1264.
Similarly, La. Const. art. X also limits the Commission's power to: (1) discrimination claims provided for in § 46(B); and (2) removal or disciplinary claims provided for in §§ 46(A) and 50.[3] Any Commission rules that purport to expand the Commission's jurisdiction beyond the boundaries set forth in the constitution must fall.
In the case at hand, no party is contesting, nor or we addressing, the constitutionality of the Commission rule at issue. Moreover, we agree that the Commission lacks the power to rule on the constitutionality of its own rules. However, the Commission is certainly not precluded from recognizing that, in the face of a conflict between its rules and certain constitutional provisions, the constitutional provisions prevail. The Constitution is the supreme law, to which all legislative acts, ordinances, rules and regulations must yield. Macon v. Costa, 437 So.2d 806, 810 (La. 1983).
Therefore, we hold the Commission has no authority to entertain the appeal of Berry's "needs improvement" rating unless it constitutes a discrimination, removal, or disciplinary action. Berry has alleged no discrimination nor has he been removed based on the rating. However, in brief, Berry asserts his petition of appeal of the "needs improvement" rating alleged the rating was nothing more than an additional disciplinary action in disguise. Our review of the petition of appeal reveals no such allegation. Rather, the petition of appeal asserts the appeal of the rating was taken pursuant to the Commission Rules. The petition of appeal goes on to request that the appeal of the rating be consolidated with the appeal of his disciplinary action, implying the rating is not part of the disciplinary action
More significantly, at the hearing, Berry never argued that the rating was a disciplinary action. Instead he argued that "the negative portion of the rating that caused it to be less than satisfactory, is dependent upon [the] disciplinary action. It's the same set of facts. So ... that was the reason for consolidating ...." The fact that the "needs improvement" rating is based on the same occurrences as the disciplinary action does not, in and of itself, convert the rating into a disciplinary action. Berry does not allege he suffered *618 any repercussions from the rating; he had already been demoted by the time the rating was issued. Nor does he allege the rating can or will be used against him in the future. On the basis of the record before us, we cannot say this "needs improvement" rating is a disciplinary action.
Concluding that Berry's "needs improvement" rating is not discriminatory, and is not a removal or disciplinary claim, we hold, as a matter of law, that the Commission lacked jurisdiction over this issue.
Assignment of error number 9 is without merit.

ATTORNEY FEES

(Assignment of Error No. 10)
In his final assignment of error, Berry contends the Commission erred in failing to award him attorney fees. Because we affirm the finding of the Commission, there is no authority for the award of attorney fees.
Assignment of error number 10 is without merit.

DECREE
For the foregoing reasons, the decisions of the State Police Commission upholding the demotion of Reuben O. Berry, Jr. by the Department of Public Safety and Corrections, Office of State Police, and declining to exercise jurisdiction over the appeal of his "needs improvement" performance rating are affirmed. Costs of this appeal are assessed against appellant, Reuben O. Berry, Jr.
AFFIRMED.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although the Commission's recitation of the parties' stipulations refers to income in the amount of $13,145, a review of the record indicates that the Commission's reference to this larger amount was solely a typographical error. All of the evidence presented to the Commission, including Berry's testimony and the demotion letter, established that the amount Berry earned was $1,345. There is no basis for concluding that the Commission actually based its findings on the larger amount.
[3] Article X, § 46 of the Louisiana Constitution of 1974 provides, in pertinent part, as follows:

(A) Disciplinary Actions.... A classified state police officer subjected to ... disciplinary action shall have the right of appeal to the commission.
(B) Discrimination. No classified state police officer shall be discriminated against because of his political or religious beliefs, sex or race. A classified state police so discriminated against shall have the right of appeal to the commission....
Article X, § 50 of the Louisiana Constitution of 1974 provides, in pertinent part, as follows:
The State Police Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases...