HIGGINBOTHAM, J.
|2In this appeal, a Louisiana State Police (LSP) trooper challenges the State Police Commission’s (the Commission) decision upholding his termination by the Department of Public Safety and Corrections, Office of State Police (the Department).
FACTS AND PROCEDURAL HISTORY
In October, 2014, Damien Dyson was employed by the Department as a LSP trooper with permanent status, ranked as a sergeant, and assigned to protective services detail at the Louisiana Governor’s mansion. Dyson was not on duty on October 10, 2014, when he began consuming alcohol before and during a party he attended near New Orleans. Shortly before 2:00 a.m. on October 11, Dyson left the party and drove his personal vehicle westbound on Interstate 10 (“1-10”) toward Baton Rouge. While driving, Dyson fell asleep and his vehicle struck another westbound vehicle, causing that vehicle to overturn near trees in the median of 1-10. Dyson was awakened by the impact, but he continued to drive approximately two miles further west to the next exit for Gonzales-Burnside, where he stopped his vehicle on the shoulder of the exit to check for evidence of hitting something and to determine his exact location. He communicated with two friends, who were law enforcement officers in .the New Orleans area, and his LSP supervisor by text messages and cell phone conversations, where he indicated that he had hit “something” while driving and he did not know where he was located. Dyson did not call 911 to report that he was involved in an accident.
Close to the same time, local authorities from the Gonzales Police Department and the Ascension Parish Sheriffs Office responded to a 911 call originating from the site of the overturned vehicle, as well as a tip from an ambulance driver who was headed to the overturned vehicle and had observed Dyson’s disabled and obviously damaged car at the Gonzales-Burnside exit. Two witnesses stopped at the scene ofjjthe accident and informed police officers that two vehicles had been involved in the accident and one had driven away. The .responding police officers soon located Dyson’s vehicle and, after making contact with Dyson, determined that he had been involved in the accident with the overturned vehicle. A LSP trooper, Kevin Leachman, was also dispatched to thé site of the overturned vehicle. After completing his investigation at the scene, Trooper Leachman proceeded to the exit where Dyson was located. Trooper Leachman observed Dyson and administered, several field sobriety tests, during which he determined that Dyson was impaired. Consequently, Dyson was arrested and charged with driving while intoxicated (DWI), hit- and-run driving, careless operation, and *719 possession of an alcoholic beverage inside his vehicle. Chemical analysis testing on a breathalyzer two hours after the accident revealed that Dyson had a .175% blood alcohol concentration.
An administrative investigation was conducted by LSP’s Internal Affairs investigators after Dyson’s arrest. During the investigation, Dyson readily admitted that he was drinking alcohol before and during the party in New Orleans, and that he continued to drink into the early morning hours. He also admitted that he drank whiskey while driving his personal vehicle to the party. In spite of consuming alcohol, Dyson admitted to investigators that he chose to drive his personal vehicle back to Baton" Rouge, fell asleep while driving, and woke up when he felt an impact. Although Dyson claimed that he did not know what he had hit, he acknowledged that he felt an impact with “something,” and that he continued to drive to the next exit where he stopped and observed significant damage to the front of his vehicle.
On December 15, 2014, Dyson was notified by a letter from Lieutenant Colonel Charles Dupuy, the Assistant' Superintendent and Chief of Staff for LSP, that his employment as a state trooper with LSP was terminated for failure to |4conform to state laws (a violation of LSP Policy and Procedure Order No. 901-3[2]) and conduct unbecoming an officer (a violation of LSP Policy and Procedure Order No. 901-04[3]). Dyson timely filed a notice of appeal with the Commission seeking reversal of his termination. ' •
At the hearing before a quorum of the Commission on July 9, 2015, Dyson challenged the authority of Lt. Col. Dupuy as the appropriate appointing authority to take action regarding his termination. Without objection, the Department introduced evidence of Lt. Col. Dupuy’s authority to act in the form of: (1) a memorandum dated January 15, 2008, by James M. LeBlanc, the Secretary of the Department, appointing Colonql .Michael D. Edmonson as the Deputy Secretary for the Department; and (2) an affidavit from Col. Ed-monson dated April 9, 2012, delegating authority to Lt. Col. Dupuy, as acting appointing authority for all LSP employees, with the exception that the termination of any permanent employee be approved by Col. Edmonson. Additionally, Lt. Col. Du-puy .testified that he had discussed Dyson’s case with. Col. Edmonson several times, and that Col. Edmonson not only agreed with, but approved the termination of Dyson. There was no evidence to the contrary. Dyson and multiple witnesses testified at the hearing, where the parties submitted joint stipulations of fact and stipulations regarding LSP’s policies and procedures. Additionally, the entire ad *720 ministrative record was admitted into ^evidence. At the dose of the hearing on the merits of .Dyson’s termination appeal, the Commission took the entire matter under advisement.
On August 13, 2015, the Commission rendered a decision denying Dyson’s appeal. The Commission found that Dyson had violated LSP policies and procedures as alleged, that the proper appointing authority had terminated Dyson’s employment, and that the termination was justified and commensurate with Dyson’s conduct that had fallen below the standard expected of LSP troopers. Dyson appealed the Commission’s decision upholding his termination to this court, asserting three errors: (1) the Commission erred in finding that Dyson violated the hit-and-run driving statute, which ¿ave rise to the violation of LSP’s “conformance to laws” policy; (2)' the Commission erred in not reducing Dyson’s termination to a lésser corrective action more commensdrate with the cause for discipline; and (3) the Commission erred in finding that' Dyson was terminated by the appropriate appointing authority.
STANDARD OF REVIEW
An employee who has gained permanent status in the classified LSP service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const. art. 10, § 46(A); Berry v. Department of Public Safety and Corrections, 2001-2186 (La.App. 1st Cir.9/27/02), 835 So.2d 606, 611. Such an employee may appeal to the Commission from any disciplinary action, and the burden of proof on such an appeal, as to the facts, is on the appointing authority. Id. The Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases.[4] La. Const. art. 10, § 50; Berry, 835 So.2d at 611. The Commission’s authority “to hear and decide” cases involving disciplinary actions includes a duty to decide independently from the facts presented 1 ({whether the appointing authority has good cause for taking the action and, if so, whether the punishment imposed.is commensurate with the cause. Department of Public Safety and Corrections, Office of State Police v. Mensman, 95-1950 (La.4/8/96), 671 So.2d 319, 321 (per curiam).
The decision of the Commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the Commission is located. La. Const. art. 10, § 50; Berry, 835 So.2d at 611. In these instances, the appellate court is presented with a multifaceted review function: (1) deference will be given to the factual conclusions of the. Commission, and the findings of fact will not be modified unless manifestly erroneous or clearly wrong; and (2) in evaluating the •Commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and.the punishment is commensurate with the infraction, the reviewing court should not modify the Commission’s decision unless it is arbitrary, capricious or characterized by abuse of discretion. Berry, 835 So.2d at 611,
DISCUSSION
Dyson does not dispute the pertinent facts, which were jointly stipulated. Instead, Dyson argues that the undisputed facts do not support a finding that he violated the hit-and-run driving statute, *721 La. R.S. 14:100[5], which was one of the bases for the Commission’s finding that Dyson had violated LSP policy for- “conformance 17to laws” and for “conduct unbecoming an officer.” Dyson maintains that because he was impaired and fell asleep while driving, he did not know that he was involved in an accident that would have necessitated he stop, report the accident, and render aid. The. stipulations and evidence in the record clearly establish that Dyson was so impaired while he was driving, that he fell asleep and hit another vehicle. Despite being awakened by the impact and having knowledge that he impacted something, Dyson did not stop until he was two miles away from the scene of the accident in order to check for damage to his car and to determine his location. Dyson did not report that he had been in an accident to the police; rather, he communicated with two friends (who were law enforcement officers) and his LSP supervisor that he had hit something, but he' did not ask for assistance in reporting an accident. Additionally, Dyson did not render aid to the driver of the vehicle that he hit.
We find it significant that Dyson immediately acknowledged he had been involved in an accident. He stated that he knew he had impacted something, but because he was asleep at the time of the impact, he did not know that he had hit another vehicle. After having knowledge of being involved in an accident, if a driver fails to stop at the scene of the accident, report the accident, and provide help, the elements of hit-and-run driving are met. See State in Interest of Korkosz, 393 So.2d 332, 333-34 (La.App. 1st Cir.1980). Criminal culpability is based on the individual’s action or inaction after being involved in an accident. See State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7, 16. See also State v. Davenport, 2006-0363 (La. App. 3d Cir.9/27/06), 941 So.2d 629, 631-32. General criminal intent exists by the very doing of the act, ie., intentionally failing to stop after becoming aware of being involved in an accident. Williams, 893 So.2d at 16. The lack of knowledge as to exactly what he hit because he was intoxicated and had fallen asleep while driving does not change the facts that Dyson knew he had been involved in an accident that damaged his vehicle, and he intentionally left the scene | «of the accident. Further, Dyson did not report the accident to the proper authorities or render aid, medical or otherwise, . at the scene of the accident. Text messages and cell phone conversations with friends and his LSP supervisor, without requesting that the accident be reported to proper authorities,,.is not what is envisioned in the reporting element of the hit-and-run driving statute. The statute requires that the driver of the vehicle identify himself when reporting an accident caused by him or involving him. See Williams, 893 So.2d at 14. It is uncontro-verted that Dyson did not properly report that he was involved in an accident or render any type of aid.
An appointing authority in an administrative proceeding need only prove by a preponderance of the evidence .that *722 the complained of action Occurred and that it impaired the efficient operation of the public service. Bailey v. Department of Public Safety and Corrections, 2005-2474 (La.App. 1st Cir.12/6/06), 951 So.2d 234, 240. Furthermore, an acquittal on a criminal charge does not preclude a civil service disciplinary action based on the same set of facts. Id. Thus, it was not the Commission’s role to determine whether Dyson was actually guilty or innocent as to the crime of hit-and-run driving, or any other crime. A preponderance of the evidence supports the Commission’s conclusion that Dyson was driving while intoxicated, carelessly operated his vehicle by striking another vehicle, and left the scene of the accident without reporting it or rendering aid to the other motorist. See Bailey, 951 So.2d at 240-41. Concluding that Dyson violated LSP policies requiring him to conform to the laws of this state and to refrain from conduct unbecoming of an officer, we cannot find that the Commission committed legal or manifest error. Dyson’s first assignment of error is without merit.
We next address the disciplinary action taken in this matter. As we stated earlier, the Commission’s exercise of its discretio.n in determining whether there is legal cause for imposing punishment and whether the punishment is commensurate with the infraction should not be modified by this court unless it is arbitrary, capricious or characterized by an abuse of discretion. Berry, 835 So.2d at 611. A conclusion of a public body is “capricious” when the conclusion has no substantial evidence to support it or the conclusion is contrary to the substantiated competent evidence. Bailey, 951 So.2d at 243. The word “arbitrary” implies a disregard of evidence or of the proper weight thereof. Id.
“Cause” for dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. Huval v. Department of Public Safety and Corrections, 2009-0699 (La. App. 1st Cir.10/23/09), 29 So.3d 522, 528. Dismissal from permanent employment is obviously the most extreme form of disciplinary action that can be taken against a classified state employee. Id. However, even a single particularly aggravated incident has been found to constitute legal cause of dismissal. Id.
Dyson asserts that the Commission erred in not reducing his termination to a lesser corrective action such as suspension without pay, as has been done in other LSP troopers’ cases concerning off-duty DWI offenses. Dyson specifically points out his full cooperation in submitting to sobriety tests and the internal affairs investigation, as well as the fact that he was not actually convicted of the charges due to his participation in a pretrial diversion program. We note that the ultimate disposition of criminal charges is not relevant in an administrative proceeding based on the same set of facts. Bailey, 951 So.2d at 240.
At the outset, we observe that LSP rules have the effect of law, and the Commission may impose penalties that include termination for violation of the rules. See La. Const. art. 10, § 48(A)(4); Berry, 835 So.2d at 613. Lt. Col. Dupuy testified that he is responsible for enforcing LSP policy and procedures, as well as administering discipline to LSP troopers who violate LSP policy-and state laws. Lt. Col. Du-puy stated that he takes his job very seriously' and he believes that Dyson’s | ^infractions rose to the level of termination. He further testified that Dyson’s conduct was a discredit to the LSP, and that Dyson’s arrest was a newsworthy *723 event, because of the DWI, careless operation, and hit-and-run driving charges. Lt. Col. Dupuy emphasized that Dyson did not do what he was trained and required to do in situations involving accidents, and that the public expects state troopers to follow the law. Lt. Col. Dupuy also noted that no other troopers’ cases involving off-duty DWIs included hit-and-run driving charges. In summary, Lt. Col. Dupuy did not consider Dyson’s actions on October 10-11, 2014, to be up to an acceptable standard of a LSP trooper.
Many years ago we recognized in Berry, 835 So.2d at 615, that “since the public puts its trust in the poliee department as a guardian of its safety, it is essential the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust.” One of the primary missions of the LSP is law enforcement. When a LSP trooper violates the law, it casts doubt upon the credibility of the LSP to ably conduct one of its principal functions. Id. Based on the evidence concerning Dyson’s violations of LSP policy and procedure orders, we do not find that the Commission’s decision to uphold Dyson’s termination was arbitrary, capricious, or characterized by an abuse of discretion. Dyson’s reckless operation of a vehicle while intoxicated put him and others in extreme danger, and his conduct was prejudicial to the public service of the LSP. While it is a tough result, we find no error in the Commission’s conclusion that Dyson’s termination was warranted and commensurate with his violations of LSP policy and procedures. Accordingly, Dyson’s second assignment of error is without merit.
Finally, Dyson challenges the Commission’s determination that he was terminated by the appropriate appointing authority. Dyson specifically contends that the Department did not prove that Lt. Col. Dupuy had authority to terminate him. It |uis well established that disciplinary action against a classified employee must be taken by the proper appointing authority or it is null and must be set aside. Department of Agriculture and Forestry v. Jones, 633 So.2d 900, 902 (La. App. 1st Cir.), writ denied, 637 So.2d 482 (La.1994). The requirement that the disciplinary action come from the appointing authority is to be strictly construed. Id. At the hearing before the Commission, the Department introduced uncontradicted evidence that the statutory appointing authority for the Department was Col. Edmonson, the Deputy Secretary for the Department, who had authority to employ, appoint, remove, assign, and promote such personnel as is necessary for the efficient administration of public safety services. See La. R.S. 36:405(A)(1)(b) and (2). As the appointing authority, Col. Edmonson clearly possessed the power to delegate such authority. See Lane v. Department of Public Safety and Corrections, 2000-2010 (La.App. 1st Cir.2/15/02), 808 So.2d 811, 815. A lawful delegation of appointing authority can be proven by direct or circumstantial evidence, like any other fact. Louisiana Public Service Commission v. Cheathon, 625 So.2d 703, 705 (La. App. 1st Cir.1993), writ denied, 631 So.2d 1166 (La.1/13/94). Further, the delegation of authority can be implied when there is sufficient evidence of past practices and customs over time which show that the appointing authority intended to delegate that authority to another. Id.
The Department also introduced, without objection, evidence that Lt. Col. Dupuy was the delegated appointing authority at the time he signed the letter terminating Dyson’s employment. Additionally, Lt. Col. Dupuy testified that it was his job to administer discipline to LSP troopers. He *724 further testified that he and Col. Edmonson had discussed Dyson’s case numerous times, and Col. Edmonson agreed with and approved Dyson’s termination before’the termination letter was issued by Lt. Col, Dupuy. There was no evidence to . rebut Lt. Col, Dupuy’s testimony. Accordingly, we find no error, in the Commission’s ruling that Lt. Col. Dupuy was 112the proper appointing authority for the disciplinary action taken herein. Dyson’s third assignment of error is without merit. :
CONCLUSION
For the assigned-reasons, we affirm the decision of the State Police Commission, upholding the termination of Damien Dyson’s employment with the Department of Public Safety and Corrections, Office of State Policed All costs associated with this appeal are assessed against Damien Dyson.
AFFIRMED.

. LSP Policy and Procedure Order No. 901— 3 — Conformance to Laws — provides in pertinent part: “A commissioned officer shall conform to, and abide by, the laws of the United States, the State of Louisiana, all other states of the United States and subdivisions thereof.”

. LSP Policy and Procedure Order No. 901-04 — Conduct Unbecoming an Officer — provides in pertinent part: "A commissioned officer shall conduct himself at all times, both on and off-duty, in such a manner as to reflect most favorably on himself and the Department.” The term "unbecoming conduct” is defined as conduct which:
a) Brings the Department or any of its subdivisions into disrepute.
b) Reflects discredit upon the officer as a member of the Department.
c) Impairs the operations or efficiency of the Department, the officer, or state service.
d) Detrimentally affects the morale of the Department’s personnel.
e) May reasonably be expected to destroy public respect for State Police Officers and/or confidence in the Office- of State Police.

. The Commission’s power is identical to that granted the State Civil Service Commission. Department of Public Safety and Corrections, Office of State Police v. Mensman, 95-1950 (La.4/8/96), 671 So.2d 319, 320, n. 1 (per curiam).

. Louisiana Revised Statutes 14:100 provides:
A. Hit and run driving is the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid.
B. For purpose of this Section:
(1) "To give his identity”, means that the driver of any vehicle involved in any accident shall give his name, address, and the license number of his vehicle, or shall report the accident to the police.
[[Image here]]
(4) “Accident" 'means an incident or event resulting in damage to property or injury to person.